PUBLIC SERVICE RAILWAY COMPANY, PROSECUTOR, v. GENERAL OMNIBUS COMPANY OF NEW JERSEY AND THE CITY OF NEWARK, RESPONDENTS.

Argued June 4, 1919—Decided October 21, 1919.

1. An omnibus company is among that class of persons who are entitled to receive a franchise for the use of public streets under the Limited Franchise act of 1906. *Pamph. L.*, p. 50.

2. Section 2 of the act of 1906 (*Pamph. L.*, p. 50) does not require the board of commissioners of a municipality in which there is a newspaper published and circulated to designate the particular newspaper. or newspapers in which the statutory notice is to be published.

3. Since the enactment of "An act concerning municipalities," approved March 27th, 1917 (*Pamph. L.*, p. 319), as amended in 1918 (*Pamph. L.*, p. 478), the passage of an ordinance granting a franchise or right to occupy or use public streets may be lawfully effected by a majority vote.

4. The Home Rule act (*Pamph. L.* 1917, p. 319), as amended (*Pamph. L.* 1918, p. 478), furnishes a full and complete scheme for the governing of municipalities, defining their powers, and the procedure and method of enforcing them.

5. When it appears that the legislature inserted a non-repealing clause in a statute in relation to procedure for the passage of an ordinance, and in a later amending statute providing for procedure, left out the non-repealing clause, it by necessary implication repealed such procedure clause of the former statute.

6. The fact that the Home Rule act (*Pamph. L.* 1917, p. 319) as amended (*Pamph. L.* 1918, p. 478) makes no provision whatever as to what vote shall be sufficient for the passage of an ordinance or the transaction of any other lawful business, is a cogent circumstance tending to establish that the common law rule, that a majority of the members of the municipal body constituting a quorum shall be sufficient for the purpose mentioned.

On *certiorari*.

Before Justices TRENCHARD, BERGEN and KALISCH.

For the prosecutor, *Frank Bergen*.

For the General Omnibus Company, *Riker & Riker*.

For the city of Newark, *Jerome T. Congleton*.

The opinion of the court was delivered by

KALISCH, J.   The prosecutor seeks to set aside an ordinance entitled "An ordinance granting permission and consent to General Omnibus Company of New Jersey, a corporation, to operate auto buses and to use the surface of the streets hereinafter named for that purpose."

The ordinance grants consent and permission to the omnibus company to operate auto buses, and the use of the surface of the streets, avenues, &c., in the city of Newark for the operation of the buses upon the routes designated in the ordinance.

Subdivision A of section 2 of the ordinance provides that the consent is granted subject to the terms and conditions imposed by chapter 136 of the laws of New Jersey, session of 1916, which act is entitled "An act concerning auto buses, commonly called 'jitneys,' and their operation in cities," said act being commonly designated "Kates act." *Pamph. L.* 1916, *p.* 283.

The validity of this ordinance is challenged, first, upon the ground that the omnibus company is not such a corporation as is entitled to ask for or receive the consent purporting to be given by the ordinance, under the Limited Franchise act of 1906. *Pamph. L., p.* 50; *Comp. Stat., p.* 3562, § 396.

In plain terms the prosecutor's contention is, that the act of 1906 does not contemplate an omnibus company as belonging to that class of persons who are entitled to receive a franchise for the use of the public streets.

The defendant omnibus company made its application to

the municipality for a franchise to operate its buses on and over certain public streets of the city of Newark, under the statute of 1906.

It is evident to us that the omnibus company comes clearly within the class which is entitled to a franchise for the use of the public streets.

Section 2 of the act of 1906, among other things, provides where the consent of any municipality is required for the use of any street, avenue, &c., that no consent shall be granted to the person or corporation desiring the same until a petition shall have been filed, &c., specifying the period for which consent is asked and the uses in detail for which such street, avenue, &c., is desired, &c., and in the case of street railways or traction companies, the petition is required to state the character of the road proposed to be constructed, &c., the motive power to be used thereon, &c. It is hard to conceive of a more expressive indication of the legislative design, as expressed here, not to confine the granting of a franchise by a municipality for the use of its public streets and places to street railways and traction companies only. · This view is further emphasized by the fact that section 3 of the act of 1916, *supra* (on *p*. 285), which provision, with other provisions of the statute, must be read together with the act of 1906, expressly provides that a person owning and operating an auto bus as defined by the act shall pay to the city treasurer a monthly franchise tax of five per centum of its gross receipts of each and every calendar month.

The next attack upon the validity of the ordinance, as stated in the brief of counsel for the prosecutor, is as follows: "The board of commissioners of Newark never obtained jurisdiction under the statute to consider the application, because publication of notice was not made in one or more newspapers published and circulated in said municipality designated by said board or body, no such newspapers having been designated by the commissioners; although they did designate five of the most public places in the city for setting up notice, they did not adjudge that publication and posting had been made."

This objection appears to be wholly without any substance.

Section 2 of the act of 1906, page 50, in express terms provides: "Notice shall be given, by publication in one or more newspapers published and circulated in said municipality, or if there be no newspaper published and circulated in said municipality, then in one or more newspapers published in the county in which said municipality is located, to be designated by said board or body," &c.

It is apparent from this language that the statute does not require the board of commissioners of a municipality in which there is a newspaper published and circulated to designate one or more newspapers in the county for the publication of the statutory notice. The words of the act are too clear to permit any doubt on the subject.

The minutes of the board of commissioners of the city of Newark show that the board upon the filing of the petition and application by the omnibus company for the franchise did fix a time and place for the consideration of the petition and directed that notice of such application as directed by law be published in two daily newspapers, printed in the city of Newark, for two weeks, and that copies of such notices be posted at five public places mentioned in the resolution, at least fourteen days before the day fixed for the hearing.

The preamble to the ordinance sets out a compliance by the board of commissioners with the statutes, relating to the application for a franchise by an auto bus company, and also an adjudication by the board on all facts required to be adjudged by it to give it jurisdiction to enact the ordinance granting the franchise applied for. There is nothing before us appearing to the contrary.

Lastly, it is contended by the prosecutor that the ordinance is invalid because it only received three votes in its favor, whereas section 6 of the act of 1911, amended in 1912 (*Pamph. L.* 1911, *p.* 469; *Pamph. L.* 1912, *p.* 649), requires four votes to pass a valid ordinance.

The city of Newark is governed by a board of commissioners, who are five in number. There are some municipalities

in this state under the commission form of government whose board consists of only three commissioners.

The difference in the number of commissioners arises from the legislative declaration that cities of ten thousand population or more shall be governed by a board consisting of five commissioners, and cities having less than ten thousand population, by a board consisting of three commissioners. *Pamph. L.* 1911, *p.* 464, § 3.

Section 6 of the act of 1911, *inter alia,* provides that every ordinance relating to the granting of franchises, or the right to occupy or use the streets, bridges or public places, &c., must receive the approval by vote of one more than a majority of all the members before being finally adopted.

Section 3 of the act of 1911 was amended in 1912 (*Pamph. L., p.* 644) so as to permit a municipality by ordinance to increase a board of commissioners consisting of three members to five, or to decrease a board of five commissioners to three. This section, like the original, provides that a majority of the members of the board shall constitute a quorum, and that the affirmative vote of one more than a majority of all the members shall be necessary to adopt any motion, resolution or ordinance, or pass any measure unless otherwise provided for in the act.

The only important change made in the phraseology of section 6 by the amendment of 1912 was to insert the word "such" so as to read "every such ordinance," instead of "every ordinance," the plain effect of which was to leave the requirement of the section that one vote more than a majority was necessary for the passage of ordinances concerning the subjects mentioned in the section only applicable to ordinances granting street franchises.

For the defendants it is claimed that the requirement of section 6 that the vote of one more than a majority of all the members of the board is necessary to pass a valid ordinance granting any franchises or the right to occupy or use the streets was impliedly repealed by an act entitled "An act concerning municipalities," approved March 27th, 1917, as amended in 1918. *Pamph. L.* 1917, *p.* 319; *Pamph. L.* 1918,

*p.* 478. That since these enactments the passage of any ordinance may be lawfully effected by a majority vote. We think this contention is sound.

A careful examination of the statutes last referred to convinces us that it was the clear design of the legislature to do away with the differentiation of the number of votes required in commissioned governed cities to pass an ordinance relating to the granting of franchises, &c., from the number of votes required to enact ordinances relating to other matters of equal if not of more importance to the citizens of such municipalities, and to establish a uniform rule by placing the passage of all ordinances by a majority vote in all municipalities, whether under the form of commission government or under mayor and common council, or any other form of municipal rule.

The question whether the provision of section 6 of the act of 1912 concerning the vote required to pass an ordinance relating to the granting of franchises, &c., by municipalities was repealed by implication, must find its proper solution and determination in the so-called "Home Rule act" of 1917, as amended by the act of 1918.

Above all it is to be borne in mind that the Home Rule act furnishes a full and complete scheme for the governing of municipalities, defining their powers and the procedure and method of enforcing them.

Article 10 of the statute of 1917 deals with the subject of ordinances in great detail, and, among other things, on page 345 of the act, establishes the procedure for the passage of ordinances and by providing as follows: "Nothing herein shall repeal any law effective in any municipality concerning the procedure for the passage and publication of any ordinance or resolution, except   *   *   *."

This makes it apparent that the requirement of section 6 of the act of 1912, as a matter of procedure, that one more vote than a majority must be cast to pass a valid ordinance relating to the granting of franchises, &c., was kept alive by force of the non-repealing clause. The necessary inference is that it was not the legislative design at that time to repeal

any law which concerned the procedure for the passage and publication of any ordinance.

It is equally clear that in 1918 the legislative mind underwent a change. Article 10, from which the above excerpt of the non-repealing clause was taken, was amended and the entire above-quoted non-repealing clause was excised from the act.

The legal effect of this was to impliedly repeal section 6 as to method of procedure for the passage of an ordinance.

It is to be observed that the non-repealing clause refers to "any law concerning procedure for the passage and publication of any ordinance or resolution."

The circumstance that the legislature eliminated the non-repealing clause from article 10 must be given some significance.

The necessary inference is, that the legislature intended to make the procedure for the passage of ordinances and resolutions uniform throughout the various municipalities.

A comparison of section 6 of the act of 1912, with the amended article 10 of the act of 1918, will disclose that the latter provides a complete method of procedure for the passage of an ordinance.

We think the rule approved of by the Court of Errors and Appeals, in *Eldridge* v. *Philadelphia and Reading Railroad Co.,* 83 *N. J. L.* 463, that "when the legislature frames a new and general rule covering an entire subject-matter all earlier and different rules touching the same matter are to be discarded in favor of such later rule," is peculiarly applicable to the situation created by the passage of the Home Rule act in regard to the procedure for the passage of ordinances. To the same effect is *Haynes* v. *Cape May,* 52 *Id.* 180.

We think that when it appears, as it does in this case, that the legislature inserted a non-repealing clause in a statute in relation to procedure for the passage of an ordinance, and in a later amending statute providing for procedure left out the non-repealing clause, it by necessary implication repealed such procedure clause of the former statute.

That such repeal was not inadvertently brought about, in the present case, but was expressly intended, is evidenced by the fact that there was added to the amended article 10 this paragraph: "Before any ordinance shall take effect such ordinance or its title shall be published at least once in a newspaper circulating in such municipality. It shall not be necessary to publish an ordinance otherwise than required by this act."

Keeping in view that the legislature was dealing with al. ordinances, and that it declared that it shall not be necessary to publish an ordinance otherwise than as required by the later act, it seems to us that there could not have been a more expressive declaration of the legislative intent that all ordinances shall be governed by the act of 1917, as amended by the act of 1918, than expressed.

Moreover, a fair reading of the Home Rule act clearly indicates that the legislative powers conferred by the act on municipalities are to be exercised by them, so far as the regulation of their internal affairs are concerned, solely in accordance with the provisions of the act.

Its clear object was to erect a machinery of administration of municipal affairs which shall operate uniformly in all municipalities.

The fact that the Home Rule act makes no provision whatever as to what vote shall be sufficient for the passage of an ordinance, or the transaction of any other lawful business, is a cogent circumstance tending to establish that the legislature intended that the common law rule, that a majority vote of the members of the municipal body constituting a quorum shall be sufficient for the purposes mentioned.

This legal rule is well expressed in *Barnert* v. *Paterson,* 48 N. J. L. 395, by Mr. Justice Knapp (at *p.* 400), where he says: "When the charter of a municipal corporation or a general law of this state does not provide to the contrary, a majority of the board of aldermen constitute a quorum, and the vote of a majority of those present, there being a quorum, is all that is required for the adoption or passage of a motion or the doing of any other act the board has power to do."

Other cases on the subject and to the same effect are: *Mc-Dermott* v. *Miller,* 45 *Id.* 251; *Cadmus* v. *Farr,* 47 *Id.* 208, in which the English and American cases on the topic are collated by Mr. Justice Magie. *Hutchinson* v. *Belmar,* 61 *Id.* 443; *Whittingham* v. *Milburn Township (Court of Errors and Appeals),* 90 *Id.* 344, 347.

For the prosecutor it is argued that "there is no such inconsistency between the two acts as to make an implied repealer."

We have already endeavored to point out that the action of the legislature in omitting the non-repealer clause in the amendment of 1918 was tantamount to an express repeal of the provision relating to ordinances for franchises contained in article 10 of the act of 1917.

The legislative mind might have been influenced by the fact that there was no substantial reason why an ordinance relating to a franchise should require four votes in cities having five commissioners and a unanimous vote in cities having only three commissioners, while all other ordinances, no matter how important or grave to the public welfare, could be lawfully passed by a majority vote. Further, the legislature might have had in mind that to make an especial exception in the regard pointed out for the passage of ordinances relating to street franchises would have a tendency to foster monopolies, by circumscribing the granting of franchises for the use of the public streets to prospective competing corporations or persons within almost prohibitive bounds. If the original purpose of the exception was to shackle the will of the majority, in granting franchises, and in order to make it more onerous for applicants for street franchises for a legitimate purpose to obtain them, then such exception is wholly irreconcilable with the spirit of the Home Rule act.

We are inclined to the view that where the legislature, by a general statute, as here, covered the entire subject of municipal powers and procedure thereunder, as granted to the municipalities of this state, failed to make any provision for the number of votes which shall be necessary for the passage

of an ordinance or the transaction of any other lawful business, that the law-making power intended to adopt the common law rule, as above stated, and, hence, any exception, existing in a former statute, to the common law rule, and which is inconsistent with such rule is impliedly repealed, unless the exception is in express terms retained by such general statute.

The ordinance will be affirmed, with costs.