TOWN OF HAMMONTON, RELATOR, v. THOMAS C. ELVINS, MAYOR, ETC., DEFENDANT.

PETER T. RANEVE, PROSECUTOR, v. TOWN OF HAMMON-TON, DEFENDANT.

Submitted November 5, 1924—Decided January 23, 1925.

1. Under the facts of this case, *held*, that a peremptory writ of *mandamus* should issue, directed to the mayor of the town of Hammonton, compelling him to sign and deliver a contract in accordance with an award made on April 23d, 1924, by the town council for the purchase of two straight chemical engines for $21,000, from the American-La France Fire Engine Co., and for the purchase of a one and one-half (1½) ton truck chassis, from the Brockway Company for $2,800. *Held, further*, an application for a *certiorari* to review the awards should be denied.

2. *Certiorari* is a discretionary writ. Proceedings to review municipal action under such prerogative writ are not personal actions, in which the prosecutor may, upon sharp grounds, insist upon a personal right.

---

On *mandamus,* and rule to show cause.

Before Justices KALISCH, BLACK and CAMPBELL.

For the relator in *mandamus* and defendant in *certiorari*, *Charles M. Phillips* and *Clarence L. Cole*.

For the prosecutor in *certiorari* and defendant on *mandamus*, *Bleakly, Stockwell & Burling*.

The opinion of the court was delivered by

BLACK, J. A rule was allowed in this case on June 10th, 1924, directed to ·Thomas C. Elvins, mayor of the town of Hammonton, to show cause why a writ of *mandamus* should not issue requiring him to sign and execute a contract, between the town of Hammonton and the American-LaFrance Fire Engine Company, for the purchase of two straight chemical engines for $21,000, and a contract with the Brockway Company for the purchase of a one and one-half (1½) ton truck chassis for $2,800, pursuant to an advertisement, proposal and awards made by the council of the town of Hammonton, on April 23d, 1924. On September 2d, 1924, a rule to show cause was allowed why a writ of *certiorari* should not be issued to review the resolution of the town, dated April 23d, 1924.

By stipulation between the respective attorneys, it was agreed that the two cases are to be argued together, and the testimony taken and printed in the *mandamus* case, is to be used in the *certiorari* case. Both cases involve substantially the same question, viz., the legality of the awards. The awards are challenged upon the ground that they were not given to the lowest bidders, pursuant to the provisions of the statute (*Pamph. L.* 1917, *p.* 347), known as the Home Rule act, which requires contracts shall be awarded to the lowest bidder. The language of that act, so far as it is pertinent to this controversy, is as follows: "No municipality shall enter into any contract for the doing of any work or for the furnishing of any materials, supplies or labor, the hiring of teams or vehicles, where the sum to be expended exceeds the sum of $500, unless, &c., and shall award the said contract to the lowest responsible bidder." On the one side, the insistence is, the words "for the doing of any work or for the furnishing of

any materials, supplies or labor, the hiring of teams or vehicles" do not comprehend the articles in question, viz., chemical engines and one and one-half ton truck chassis. The cases cited, from our reports, bearing upon this topic are *Heston* v. *Atlantic City, 93 N. J. L.* 317; in that case it was held the work of examining and auditing the books of a city is not work or the furnishing of material or labor. So, in the case of *Delker* v. *Freeholders of Atlantic, 90 Id.* 473, the publishing of official advertisements for municipal corporations in newspapers is neither work, labor nor materials. So, rubber hose is not an improvement. *Trenton* v. *Shaw, 49 Id.* 638. Cases such as *Armitage* v. *Mayor, &c., of Newark,* 86 *Id.* 5; *Mackinnon* v. *Mayor, &c., of Newark,* 100 *Atl. Rep.* 694; *Godfrey* v. *Freeholders of Atlantic County,* 89 *Id.* 511; *affirmed,* 90 *Id.* 517; *Maginnis* v. *City of Wildwood,* 94 *Id.* 425, are not in point.

The view which we take of the facts, as disclosed by the record, renders it quite unnecessary to pursue the discussion of that point further, because the record shows that after the bids had been opened and read, it was moved and seconded that the council go into a committee of the whole for a consideration of the bids for fire apparatus as received. After a consideration of the bids, the council rose from the committee of the whole, and went into open session, with all members present. The committee of the whole recommended the following: "That the proposal or bid of the American-LaFrance Fire Engine Company, for item No. 1, two straight chemical engines, at the net price of $21,000, be accepted."

"That the proposal or bid of the Brockway Truck Corporation or Motor Truck Company, as submitted for item No. 4, for one and one-half ton truck chassis, at the price of $2,800, be accepted."

A resolution was then passed in which it was stated, "taking all things into consideration," accepting the bid of the American-LaFrance Fire Engine Company, as set out in the proposal number one for two straight chemical engines for $21,000, "is the one that should be accepted." Also, accepting the proposal number four. one and one-half (1½) ton

truck chassis for $2,800, "be accepted;" "that there be no award under proposals number two and number three, and that all bids thereunder be rejected."

The specifications provide, "the right to reject any or all bids is reserved;" "all bidders must give complete specifications of the make of car, engine, chassis, and also give, in detail, all chemical and fire equipment they intend to furnish with each piece of apparatus. Bidders must state the time within which they will make delivery, and also state specifically the service intended to be given with each piece of apparatus. Apparatus must pass a test satisfactory to the town of Hammonton, or its authorized agent or agents." As we read the proposals, the American-LaFrance Fire Engine Company was the only one which complied with the specifications under item No. 1. It proposed to furnish and deliver the fire apparatus within one hundred days. The Seagrave Company proposal was to furnish and deliver the apparatus within one hundred and twenty days. The LaFrance company also stated, "we will give a life guaranty on any of these cars, also periodical inspections free of any charge to the town of Hammonton." No bidder made so broad or so favorable a proposal. No statement as to the service intended to be given was made by the other bidders, and no guaranty except Seagrave, which is not in reality a guaranty at all. It provides, a "competent demonstration will, upon request, be furnished."

Our examination of the specifications of the respective bidders, which are quite voluminous, satisfied us that the council was justified in concluding that the town would get both better engines and better service from the LaFrance company, and that all things considered, its bid was the lowest. It was an honest exercise of the discretion vested in the council. The purpose of competitive bidding is to prevent dishonesty, chicanery and fraud. It was never intended that such a course of procedure would throttle the exercise of an honest judgment within prescribed limits. As stated, the specifications provide that the bidder "must give complete specifications of the make of the car, &c.," "also give, in de-

tail, all chemical and fire equipment." The LaFrance company specifications occupy, in the printed record, pages from 30 to 49. The Seagrave company, from 59 to 75. P. T. Raneve Buick Service, pages from 90 to 93. It would seem that, in comparing these specifications, the council should have some function other than simply comparing the figures. There seems to be no separate attack made in the brief upon the acceptance of the bid for the Brockway company under the proposal number four, one and one-half ton truck chassis, for $2,800.

There is no pretence of fraud. We think the judgment of the council should be accepted by the court. A peremptory writ of *mandamus* should be granted as prayed for.

As to the application for a *certiorari,* we think it should be denied. In addition to what has been said under the *mandamus* case, on items No. 1 and No. 4, there were several bids. Peter T. Raneve, the prosecutor, was an unsuccessful bidder. The bids were accepted on April 23d, 1924. The rule for *mandamus* was allowed June 10th, 1924. The rule for a *certiorari* was allowed, on notice, on September 2d, 1924.

It may be that owing to the delay resulting from the *mandamus* proceedings, the delay in applying for a *certiorari* has resulted in no detriment to the defendant (*Sturr* v. *Elmer,* 75 *N. J. L.* 443), and should not be disallowed on that ground.

But from what has been already said, the writ of *certiorari* should be refused. What this court said, speaking through Mr. Justice Garrison, in the case of *Atlantic Gas, &c., Water Co.* v. *Atlantic City,* 73 *N. J. L.* 360, is pertinent. "*Certiorari* is a discretionary writ, hence, a prosecutor who only in theory represents the taxpayers of a city, should not be permitted to work an injury to them in point of fact, which might readily happen if the real cause of such prosecutor's intervention were its private interest or a personal grievance." Proceedings to review municipal action under such prerogative writ are not personal actions, in which the prosecutor may, upon sharp grounds, insist upon a per-

sonal right. *McCarty* v. *Boulevard Commissioners,* 91 *Id.* 137, 143.

We conclude, therefore, that a peremptory writ of *mandamus* should go and the application for a *certiorari* should be refused, with costs.