PETER'S GARAGE, INC., A CORPORATION, PROSECUTOR. v. CITY OF BURLINGTON, A MUNICIPAL CORPORATION, AND JOHN ADAMS AND WILLIAM H. ADAMS, TRADING AS ADAMS BROTHERS, RESPONDENTS.

MAYBURRY H. BALLINGER, TRADING AS BALLINGER MOTOR COMPANY, PROSECUTOR, v. CITY OF BURLINGTON, A MUNICIPAL CORPORATION, AND JOHN ADAMS AND WILLIAM H. ADAMS, TRADING AS ADAM BROTHERS, RESPONDENTS.

Submitted January 3, 1939—Decided January 17, 1939.

Before Justice PERSKIE, in chambers, pursuant to statute.

For the prosecutors, *Harry Green.*

For the city of Burlington, *Thomas D. Begley* and *C. Zachary Seltzer.*

For Adams Brothers, *Leonard H. Savadove.*

PERSKIE, J. Did the city of Burlington, as each prosecutor claims, illegally award the contract for three two-ton trucks to John Adams and William H. Adams, trading as Adams Brothers?

The city of Burlington set out to purchase three two-ton trucks. It invited sealed proposals for said trucks reserving the right to reject any and all bids. The advertisement contained the further requirements that the trucks be "equipped with 12 gauge all steel 5 yard dump bodies and hydraulic hoists, 96″ long and 72″ wide, said bodies to be not less than thirty inches in height, drop sides with barn door type tail gate;" that each bidder submit with his bid "detailed specifications of the trucks offered" including "an offer or allowance" to the city for "two used Ford trucks and one Chevrolet truck" which it owned; and that the contract for said trucks would be awarded "to the lowest responsible bidder when specifications in the judgment of the Common Council will best supply the type of truck desired."

Pursuant to such advertisement the city received bids but rejected them; no reason for so doing is made to appear. The city again under like proposal advertised for bids. Quite a few bids were received, and although Adams Brothers were not the lowest bidders the city awarded the contract to them. Thereafter the city, however, upon the request of Adams Brothers released the latter from their bid; the reasons being that Adams Brothers were not at the time duly licensed as dealers by the Commissioner of Motor Vehicles of this state; and perhaps the threatened challenge of the award since prosecutors had given notice of an application for a writ of *cer-*

*tiorari* to review same. Finally and for the third time the city again, under like proposal, advertised for bids. As a result of this advertisement the following bids were received:

|  | Gross | Allow. | Net Cost |
|---|---|---|---|
| International Harvester Co., 3 two ton trucks | $4,834.32 | $593.32 | $4,241.00 |
| G. Ridgeway Marter (Mack) |  |  | 4,165.00 |
| Peter's Garage, Inc., 3-2 ton trucks (Dodge) | 3.631.50 | 676.00 | 2.955.00 |
| Ballinger Motor Co., 3-2 ton trucks (Ford) | 3,405.00 | 150.00 | 3,255.00 |
| Ballinger Motor Co., 3-2 ton trucks (Ford) | 3,030.00 | 150.00 | 2,880.00 |
| Adams Brothers, 1-2 ton truck (G. M. C.) | 1,629.90 | 180.00 | 1,449.90 |
| Adams Brothers, 3-2 ton trucks (G. M. C.) |  |  | 4,349.70 |
| Tranton Truck Sales, 2-2 ton trucks (Diamond T) | 4,407.36 | 87.18 | 4,320.18 |

A council meeting was held on August 23d, 1938, in order to act upon the bids. Eleven of the twelve councilmen were present. The bids were referred to the street committee and, after a short recess, a resolution was passed, by a vote of six to five, accepting the bids submitted by Adams Brothers, "it being the opinion of the common council that said bid is the lowest responsible bid offering to furnish the type of trucks best suited to the needs of the city." As we have seen the bids submitted by both prosecutors were lower than the bid accepted. Prosecutors objected in due time and now argue that the resolution accepting the Adams Brothers' bid should be set aside.

*First:* It is argued that Adams Brothers were not the lowest responsible bidders. In support of this argument reliance is placed upon *R. S.* 40:50-1, which provides:

"No municipality shall enter into any contract for the doing of any work, or for the furnishing of any materials,

supplies or labor, or the hiring of teams or vehicles, where the sum to be expended exceeds the sum of one thousand dollars, unless the governing body shall first publicly advertise for bids therefor, and shall award the contract to the lowest responsible bidder."

I do not think the provisions of this statute are applicable. For, in my opinion, a contract to purchase a dump truck is not a contract "for the furnishing of any materials, supplies or labor." A dump truck is apparatus, and the furnishing of apparatus is not the furnishing of materials or supplies. *Hahn Motor Truck Corp.* v. *Atlantic City,* 6 *N. J. Mis. R.* 234; 140 *Atl. Rep.* 675. Thus our courts have held this statute inapplicable in the cases of *Hahn Motor Truck Corp.* v. *Atlantic City, supra,* involving the purchase of a combination pumper, chemical and hose wagon, in *Simmons* v. *Mayor, &c., Wenonah,* 6 *N. J. Mis. R.* 902; 143 *Atl. Rep.* 73, involving the purchase of a fire truck and miscellaneous fire equipment, in *Hammonton* v. *Elvins,* 101 *N. J. L.* 38; 127 *Atl. Rep.* 241, involving chemical engines and truck chassis (see, also, cases cited on *p.* 40), in *Petterson* v. *Board of Education, Union City,* 6 *N. J. Mis. R.* 374; 141 *Atl. Rep.* 924, involving an oil burner, and in *Automatic Voting Machine Co.* v. *Freeholders of Bergen County,* 120 *N. J. L.* 264; 199 *Atl. Rep.* 375, involving voting machines.

Counsel for prosecutors has not pointed out any real distinction between these cases and the case at bar; and the court perceives none.

*Second:* Prosecutors further argue even if it be conceded that the city was not obliged to advertise, nevertheless, the award was illegal because the governing officials abused their discretion in the premises. It is, of course, settled that apart from the statutory inhibition, the award of a contract by municipal authority must be bottomed upon the exercise of a "discretion within proper limits" (*Hahn Motor Truck Corp.* v. *Atlantic City, supra*), upon a "fair and intelligent consideration" thereof (*Simmons* v. *Mayor, &c., Wenonah, supra,* at *p.* 904), upon circumstances free from "fraud" (*Hammonton* v. *Elvins, supra,* at *p.* 42). In short, "good

faith and honesty" are the determinative factors. *Ryan* v. *Paterson,* 66 *N. J. L.* 533, 535; 49 *Atl. Rep.* 587.

This cause was, in the first instance, argued before me upon the return of the writ on a stipulation of the facts. In the brief submitted for prosecutors it was argued, *inter alia,* but without supporting proof, that the challenged award was lacking in good faith and honesty. Faced with such a serious charge, and faced with the legal principle that courts do not substitute their judgment for the judgment of those selected by the people and charged with the duty of acting in good faith unless a clear showing of bad faith is disclosed (*Blair* v. *Brady,* 11 *N. J. Mis. R.* 854, 857; 168 *Atl. Rep.* 668; *Cohen* v. *Township Committee of Hamilton Township,* 15 *N. J. Mis. R.* 687, 690; 194 *Atl. Rep.* 436), I continued the cause, in fairness and justice to all parties, to the end that counsel for prosecutors be given every opportunity of supplying proof to substantiate their claim of bad faith and dishonesty.

Testimony pursuant to my direction was taken and submitted. I desire to make clear that I express no opinion as to the policy employed by the majority in the selection which they made or in the manner in which they made their selection effective. That is their responsibility to those whom they govern. Courts cannot compel governing officials to act wisely, but it can and does compel them to act in good faith. And to say that governing officials must act in good faith is merely equivalent to saying that they must act honestly. Have prosecutors proved that the governing officials made the challenged award dishonestly? I could perhaps with utmost propriety dismiss this claim by saying that the legal proofs utterly fail to support the claim. For counsel for prosecutors concedes that he has not produced actual proof of bad faith but strongly urges that he has produced proof which tends to indicate that there is "plenty of smoke" and, therefore, there must have been "fire." What is that proof? Without unduly detailing it, counsel argues that the proposal for prospective bidders was not lodged with either the clerk or the mayor. That is so. Conceding that the necessary

proposal should have been lodged with the proper officials so that it should be available to all, the fact is that the provisions of the proposal were advertised; and no bidder complains that he was unable to bid by reason of the stated circumstance. As we have observed, quite a number did bid and varied makes of trucks were represented by the bidders.

It is next argued that once the city advertised that it would award the contract to the lowest responsible bidder then it was obliged to do so even if advertisement was unnecessary. That is not so. We have again and again said that "unless the statute controlled" the advertisement, specifications, opening of bids, and other formal procedure are not legally necessary or controlling on the city. *Automatic Voting Machine Co.* v. *Freeholders of Bergen County, supra* (at *p.* 267); *Trenton* v. *Shaw,* 49 *N. J. L.* 638; 12 *Atl. Rep.* 902.

It is next argued not that the city did not get trucks in accordance with the specifications submitted by Adams Brothers, but rather that the city did not get two-ton trucks. The proof is to the contrary. It indicates that the trucks which the city selected are advertised by the General Motor Truck Corporation as being within the one and one-half to two-ton range type. They were "specials." That is they were especially built for Adams Brothers; they were equipped with "heavy rear axles," with "overload springs" and with "larger tires than standard." As a result of this special equipment they are regarded and treated in the trade as two-ton trucks. If there is anything improper about such a classification and if Adams Brothers derived any special advantage thereby the proofs fail so to indicate, and, moreover, the proofs likewise fail to indicate bad faith on the part of the governing officials on this score. They had nothing to do with either circumstance. The city received just what Adams Brothers under their specifications agreed to deliver.

It is next argued that the speed with which Adams Brothers delivered the trucks (they were delivered within a day or so of the award), is a further indication of bad faith. That, of course, does not necessarily follow. Especially so when, as here, the trucks had been built after Adams Brothers had

obtained the award following the second advertisement; they were, therefore, on hand ready for immediate delivery.

I am constrained to and do find, under the proofs submitted, that prosecutors have not carried the burden of establishing bad faith or dishonesty on the part of the governing officials.

*Third:* The final argument is that the resolution is void because not approved by a majority of the council. Assuming but not deciding that the contention is pertinent, it is rested upon the provisions of the act under which the city of Burlington was incorporated which are to the effect that no ordinance or by-law could be enacted without a concurrence in vote of seven members of the council. Entirely apart from the observation that the legislation before me is a resolution and not an ordinance, the fact should be marked that the Home Rule act of this state (*R. S.* 40:49-1, *et seq.*), "lays down completely and finally the method of adoption of all ordinances in all municipalities of the state, under whatever form of government they may exist." *Ferretti* v. *Atlantic City,* 5 *N. J. Mis. R.* 479, 480; 137 *Atl. Rep.* 217. The Home Rule act, *supra,* makes no provision as to the vote necessary for the passing of an ordinance. That fact, it has been held, is a "cogent circumstance tending to establish that the legislature intended that the common law rule that a majority vote of the members of the municipal body constituting a quorum shall be sufficient to the purposes mentioned." *Public Service Railway Co.* v. *General Omnibus Co.,* 93 *N. J. L.* 344, 351; 108 *Atl. Rep.* 229. In the case before me a quorum was present, and a majority vote of that quorum approved the resolution in question. That is sufficient.

The writs are dismissed, but without costs.