A. C. SCHULTES & SONS, A PARTNERSHIP CONSISTING OF ·A. C. SCHULTES, Sr., A. C. SCHULTES, Jr., JAMES F. SCHULTES AND MARY E. SCHULTES, PLAINTIFFS-RESPONDENTS, v. TOWNSHIP OF HADDON, A MUNICIPAL .CORPORATION OF THE STATE OF NEW JERSEY, DEFENDANT, LAYNE-NEW YORK COMPANY, INC., A CORPORATION OF THE STATE OF NEW YORK, DE-FENDANT-APPELLANT.

Argued October 15, 1951—Decided October 29, 1951.

*Mr. Joseph B. Perskie* argued the cause for appellant (*Messrs. Perskie & Perskie,* attorneys).

*Mr. John Milton, Jr.,* argued the cause for respondents (*Mr. Lynwood Lord* and *Messrs. Milton, McNulty & Augelli,* attorneys; *Mr. William Bannon,* on the brief).

The opinion of the court was delivered by

WACHENFELD, J. The query here is whether or not a contract with a municipality for the construction and drilling of deep wells for increased water supply, at a cost exceeding

$1,000, comes within the statutory requirements providing for advertisement and the awarding of the contract to the lowest bidder.

The Township of Haddon needed an additional water supply and accordingly advertised for bids which called for the construction of one test well and two completely finished wells at either the 200-foot level or the 400-foot level, depending upon the information derived from drilling the test well. Bids were received from the ·plaintiff-respondent, A. C. Schultes & Sons, and from the defendant-appellant, Layne-New York Company, Inc., but were rejected by the township.

In asking for new bids, the township separated the drilling of the test wells from the construction of the permanent wells which would become part of its water system. The new request also provided for the building of two test wells instead of the one originally called for. Two separate advertisements were made and two separate sets of plans and specifications were prepared for use of the bidders, who were not obliged to bid on both contracts or on all alternative plans set out in the specifications for the deep wells.

The defendant was the low bidder for the drilling of the two test wells and was awarded a contract which is not under attack. It was also awarded a contract for the deep wells on which its bid was higher than the plaintiff's. The award was challenged by the institution of a proceeding in the Chancery Division by way of complaint in lieu of prerogative writ seeking to set aside the contract so made upon the ground that it was not given to the lowest bidder and so was in violation of the statute.

An *ad interim* restraint against the doing of any work on the contract was imposed and the parties have consented to its continuance pending the outcome of this litigation. Cross-motions for summary judgment were made by both parties and depositions taken. It was stipulated that the cause should be determined on the basis of the pleadings, the affidavits and the depositions as though the facts therein contained were adduced at final hearing.

The court below entered judgment setting aside the award of the contract to the Layne-New York Company, Inc. Because of the doubtful availability, as time progressed, of the equipment required for the performance of the contract and the likelihood of increased costs to the municipality for the completion of the project undertaken, all parties asked for, and this court granted, certification.

R. S. 40:50–1 provides, amongst other things:

"No municipality shall enter into any contract for the doing of any work, or for the furnishing of any materials, supplies or labor, or the hiring of teams or vehicles, where the sum to be expended exceeds the sum of one thousand dollars, unless the governing body shall first publicly advertise for bids therefor, and shall award the contract to the lowest responsible bidder."

R. S. 40:62–47 gives the governing body the right to pass ordinances and resolutions and to make agreements and contracts and to do all other acts necessary to provide water for public and private uses of the municipality and its inhabitants in accordance with the provisions of sections 40:62–48 to 40:62–105 of this title, while R. S. 40:62–63 requires that:

"Whenever any work to be performed or materials to be furnished under sections 40:62–47 to 40:62–105 of this title, or any of them, may involve an expenditure of any sum exceeding one thousand dollars, the governing body shall advertise for bids therefor, and award and execute the contract therefor, as provided in chapter 50 of this title (§ 40:50–1 et seq.). The advertisements shall specify the dimensions and quality of the work to be done or materials to be furnished.

This section shall not be construed to apply to the compensation of specially retained advisers * * *."

Unless the provisions of R. S. 40:50–1 and R. S. 40:62–63 are applicable, no advertisement is needed as admittedly the city did not act in bad faith. If the statutes do not apply, the municipality had the right to award the contract in question to the bidder it felt would best serve the interests of its taxpayers. Trenton v. Shaw, 49 N. J. L. 638

(*E. & A.* 1887) ; *Murray v. Bayonne,* 73 *N. J. L.* 313 (*Sup. Ct.* 1906) ; *Delker v. Freeholders of Atlantic,* 90 *N. J. L.* 473 (*E. & A.* 1917) ; *Heston v. Atlantic City,* 93 *N. J. L.* 317 (*Sup. Ct.* 1919). Even though the municipality actually advertised as it did here, nevertheless, if the statutes are inapplicable, there is no obligation upon the city to award the contract to the low bidder. Unless the statute controls, the advertisement, specifications, opening the bids and other formal procedures are not legally required. *Peter's Garage, Inc., v. Burlington,* 121 *N. J. L.* 523 (*Sup. Ct.* 1939), affirmed 123 *N. J. L.* 227 (*E. & A.* 1939) ; *Automatic Voting Machine Co. v. Freeholders of Bergen Cty.,* 120 *N. J. L.* 264 (*Sup. Ct.* 1938) ; *Trenton v. Shaw, supra.*

The plaintiff's financial responsibility and its ability to perform are not questioned, but it is vehemently asserted that the statute does not govern because the contract calls for special skill, knowledge, training, learning and experience, as distinguished from the performance of work or the furnishing of materials and supplies. It is further contended that, even if the performance of the contract does not call for such technical qualifications, still there is no necessity to advertise or to make the award to the lowest bidder because the contract calls for the furnishing of apparatus and specialized equipment.

The clear legislative purpose as expressed in its various mandates is to afford maximum protection to the taxpayer where expenditures will be in excess of the figure mentioned in the statute. Judicial pronouncements have, over the years, created certain exceptions not specifically embraced in the legislative language and these limitations have presumably been acquiesced in by the Legislature since it has not adopted supplemental enactments to a contrary effect.

Municipal contracts to purchase motor trucks have been held to be contracts for apparatus and not materials or supplies within the purview of *R. S.* 40:50-1. In *Solomon v. Newark,* 137 *N. J. L.* 247 (*Sup. Ct.* 1948), Mr. Justice Burling grouped many of the cases in this category :

"The error in this contention lies in the fact that it is settled law that a contract of this nature is one for apparatus and not for materials or supplies. *Peter's Garage, Inc., v. Burlington* (*Supreme Court*, 1939), 121 *N. J. L.* 523; affirmed (*Court of Errors and Appeals*, 1939), 123 *Id.* 227 (purchase of trucks); *Automatic Voting Machine Co. v. Freeholders of Bergen County* (*Supreme Court*, 1938), 120 *Id.* 264 (voting machines); *Simmons v. Mayor and Council of the Borough of Wenonah* (*Supreme Court*, 1928), 6 *N. J. Mis. R.* 902 (fire truck and miscellaneous equipment); *Hahn Motor Truck Corp. v. Atlantic City* (*Supreme Court*, 1928), 6 *Id.* 234 (combination pumper, chemical and hose wagon); *Hammonton v. Elvins* (*Supreme Court*, 1924), 101 *N. J. L.* 38 (chemical engines and truck chassis). This interpretation of the statute over such a period of time without amendment by the legislature is indicative that such construction is in accord with the legislative intent. *State v. Moresh* (*Court of Errors and Appeals*, 1938), 122 *Id.* 77, 79."

See also *Schwartz v. Bd. of Chosen Freeholders,* 6 *N. J. Super.* 79 (*App. Div.* 1949).

█ Relying upon these adjudications, the appellant suggests "through all of these cases runs the theory of the courts that the Legislature in using the words 'work, materials, supplies and labor' intended the economic, industrial and popular understanding of those words and did not intend the words to apply to a situation which required peculiar professional education or experience," and it insists "it is incumbent" on us to examine the record "to ascertain whether that which is called for under the contract requires specialized learning, training and skill."

Our examination of the contract convinces us it contemplated and called for the doing of work and the furnishing of materials, labor and supplies. In fact, it is so specified in almost every paragraph.

The identical question here encountered has already been disposed of in this jurisdiction in *American Water Corp. v. Mayor, etc., Florham Park,* 5 *N. J. Misc.* 969 (*Sup. Ct.* 1927), where the borough refused to award a contract for the digging of a well and the installing of a pump and appurtenances to the American Water Corporation, rejecting its bid and awarding the contract to Layne-New York Company, presumably

the appellant in the case *sub judice*. The contract was set aside, the court saying:

"Under this statute the borough was obliged to award the contract to the prosecutor as being the lowest bidder unless there was evidence that would justify a belief on the part of fair-minded and reasonable men that the lowest bidder would be unable to perform its contract."

The record bespeaks the necessity, if a successful completion is to be attained, of various degrees of skill on the part of the engineers in charge and even a degree of skill in the common laborer employed. That much at least is required in this enlightened age for the efficient and workmanlike performance of any job, no matter how routine. There is no proof in the record, however, that the project here specified was so intricate and complex as to demand such highly specialized skill, knowledge, training and experience as would take it outside the operation of the statute; nor was there present the element of personal selectivity which intuitively causes one to choose a certain physician, lawyer or artist over another, their professional qualifications seemingly being equal. *Heslon v. Atlantic City, supra.*

As to the defendant's assertion that, apart from the question of the degree of skill required, the contract is for the furnishing of apparatus rather than labor, materials and supplies and so is not within the scope of *R. S.* 40:50–1 and *R. S.* 40:62–63, this is merely an attempted analogy between the drilling and constructing of a well and the furnishing of equipment such as fire engines, voting machines, etc., as dealt with in the cited cases.

A consideration of all the facts in the record shows the fallacy of such a comparison. The contract is not for the delivery of pumps; it covers the job of digging wells on ground owned by the municipality, including labor and the installation of necessary devices and equipment as therein specified. The contract price covers the over-all project, the furnishing of supplies being merely one of the items included. We cannot agree with the appellant's conclusion.

Lastly, the defendant contends the question of who is the low bidder cannot be finally resolved until it is known, on information obtained from the test wells, whether the permanent wells will have to be sunk to the 200-foot or the 400-foot level. As to the 200-foot wells, it contends its bid is lower than the plaintiff's. It arrives at this result by lumping together its low bid, already accepted, on the test wells with its higher bid on the permanent ones. There is merit neither to the argument nor to the arithmetic employed. Bids for the test wells and the permanent installations were separate and distinct; bidders were informed they could, if they chose, bid on only one of the jobs instead of on both. The defendant's low bid on the test wells has been accepted and the price for that work has accordingly been fixed. It is not here in dispute.

The only remaining question was, who submitted the lower bid for the permanent wells, at either the 200-foot or the 400-foot level. It is answered by even the most casual inspection of the record; the plaintiff's bid was the lower in both cases. The township, having accepted the defendant's lower bid on one project, under these circumstances is under no obligation, statutory or contractual, to accept its higher offer on the other. It is, on the contrary, under the statutory duty to accept the lowest responsible bid in each category.

The judgment is affirmed.

*For affirmance*—Chief Justice VANDERBILT and Justices CASE, WACHENFELD, BURLING and ACKERSON—5.

*For reversal*—None.