99 N.J. Super. 69 (1968)
238 A.2d 504
CLOSTER SERVICE STATIONS, INC., A NEW JERSEY CORPORATION, PLAINTIFF-RESPONDENT,
v.
THE BOARD OF COMMISSIONERS OF THE VILLAGE OF RIDGEFIELD PARK, ET AL., DEFENDANTS-RESPONDENTS, AND BENITO A. DELUCA, THOMAS J. SWEENEY AND JOHN FARREL, INTERVENORS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued January 22, 1968.
Decided February 2, 1968.
*70 Before Judges CONFORD, COLLESTER and LABRECQUE.
Mr. Melvin Gittleman argued the cause for intervenors-appellants (Messrs. Capone & Gittleman, attorneys).
Mr. Sidney V. Stoldt, Jr. argued the cause for defendants-respondents (Mr. Howard M. Kaplan, of counsel).
*71 The opinion of the court was delivered by LABRECQUE, J.A.D.
Intervenors-appellants Benito DeLuca, Thomas J. Sweeney and John Farrel (the intervenors) appeal from summary judgment in favor of Closter Service Stations, Inc. (Closter) and against defendants Village of Ridgefield Park and its board of commissioners (board).
Closter instituted the present action in lieu of prerogative writs to compel payment by the municipality for two Chevrolet police patrol cars and a Chevrolet truck. The present appeal is concerned only with the purchase of the two patrol cars. They were ordered in December 1965 following submission of two written proposals by Closter to furnish one of them at a price of $1,526 plus a 1965 Ford then being used as a police patrol car, and the other for $1,826 plus a 1964 Ford then being used as a police patrol car. One was delivered in February and the other in March 1966, and both were put into service immediately. Payment was originally resisted for the reasons, among others, that the mayor, who had placed the order, was without authority to bind the board and that the purchases were invalid because made without competitive public bidding. Following the filing of answer Closter moved for and was granted a summary judgment. When it appeared that the board did not intend to appeal the summary judgment (entered January 23, 1967) DeLuca, Sweeney and Farrel served notice of a motion for leave to intervene, as taxpayers, for the purpose of taking an appeal. On February 28, 1967, and while the motion was pending, the board resolved to pay the judgment, doing so immediately thereafter. Leave to intervene was granted by order dated March 6, 1967, and the present appeal followed. Plaintiff has taken no part in this appeal.
Ridgefield Park was and still is governed by a board of three commissioners under the provisions of the Walsh Act, N.J.S.A. 40:70-1 et seq., so that the head of the department to which the police department was assigned was responsible for purchasing police equipment. Here the police department had been allocated to the Department of *72 Public Safety, of which the mayor was the director. See Durkin v. Ellenstein, 127 N.J.L. 55 (Sup. Ct. 1941). The two patrol cars were delivered pursuant to a written order signed by the mayor. As noted, they were immediately put to use. They were later disposed of after they had been involved in various casualties and their useful lives had been exhausted.
Although there was no appeal from the order allowing intervention, the board urges that the issue now before us is moot because of its payment of the judgment. It reasons that an intervening party "takes the case as it finds it"; therefore, since the judgment was paid before the order for intervention was signed, there is no longer a justiciable controversy. Not so. The application for intervention antedated the payment in question. It was made within the time allowed for appeal by the rules. The appeal itself was timely and its determination was for the court rather than the board. The facts here in no wise resemble those in cases such as Kansas ex rel. Beck v. Occidental Life Ins. Co., 95 F.2d 935 (10 Cir. 1938), certiorari denied 305 U.S. 603, 59 S.Ct. 63, 83 L.Ed. 383 (1938), cited by the board, where the state as intervenor sought to relitigate issues which had already been resolved at a prior trial and affirmed on appeal. We therefore hold that the matter is not moot and proceed to consideration of the merits.
The sole point raised by the intervenors is that the purchase of the two patrol cars was in violation of the New Jersey bidding statute applicable to municipalities, N.J.S.A. 40:50-1, and hence null, void and of no effect. The applicable portion of the statute provides that:
"No municipality shall enter into any contract for the doing of any work, or for the furnishing of any materials, supplies or labor, or the hiring of teams or vehicles, where the sum to be expended exceeds the sum of $2,500.00, unless the governing body shall first publicly advertise for bids therefor, and shall award the contract to the lowest responsible bidder, provided, however, that such advertising shall not be required where the contract to be entered into is one for the supplying of any product or the rendering of any service by a *73 public utility subject to the jurisdiction of the Board of Public Utility Commissioners of this State and tariffs and schedules of the charges, made, charged, or exacted by the public utility for any such products to be supplied or services to be rendered are filed with the said board."
Its purposes have been held to be to guard against favoritism, improvidence, extravagance and corruption, Hillside Township v. Sternin, 25 N.J. 317 (1957), and to secure competition which, in turn, works to protect the public against chicanery and fraud in public office. Arthur Venneri Co. v. Housing Authority of Paterson, 29 N.J. 392 (1959); Fereday and Meyer Co., Inc. v. Board of Public Works of Elizabeth, 27 N.J. 218 (1958).
We are not here concerned with the question of whether the plaintiff was, in the absence of competitive bidding, entitled to recover on quantum meruit. See S.H. Roemer Co., Inc. v. Board of Chosen Freeholders of Camden County, 91 N.J. Super. 336 (Law Div. 1966). The question posed is whether the purchase of the two patrol cars constituted, as claimed by the intervenors, "the furnishing of * * * materials, supplies or labor." The board contends only that they were apparatus and, hence, not subject to the bidding requirement.
Various types of municipal procurement have been held to come within the cited statute as involving the purchase of materials or supplies. They include contracts for the purchase of gasoline, Shore Gas and Oil Co. v. Spring Lake, 27 N.J. Super. 33 (App. Div. 1953); the collection of garbage, Scatuorchio v. Jersey City Incinerator Authority, 14 N.J. 72 (1953); the supplying of water, Van Reipen v. Jersey City, 58 N.J.L. 262 (Sup. Ct. 1895); the drilling of wells and furnishing of equipment therefor, A.C. Schultes & Sons v. Haddon Tp., 8 N.J. 103 (1951); the purchase of books, S.H. Roemer Co., Inc. v. Board of Chosen Freeholders of Camden County, supra, and of automobile tires, Schwartz & Nagle Tires, Inc. v. Board of Chosen Freeholders of Middlesex *74 County, 6 N.J. Super. 79 (App. Div. 1949), certification denied 4 N.J. 127 (1950).
Uniformly excluded as not within the appellation of materials or supplies has been the purchase of so-called "apparatus." Peters Garage, Inc. v. Burlington, 121 N.J.L. 523 (Sup. Ct. 1939), affirmed 123 N.J.L. 227 (E. & A. 1939). The apparatus exception to the bidding statute was applied to the purchase of voting machines in Automatic Voting Machine Co. v. Board of Chosen Freeholders of Bergen County, 120 N.J.L. 264 (Sup. Ct. 1938); fire trucks and miscellaneous fire equipment in Simmons v. Mayor, etc., of Wenonah, 6 N.J. Misc. 902, 143 A. 73 (Sup. Ct. 1928), and Hahn Motor Truck Corp. v. Atlantic City, 6 N.J. Misc. 234, 140 A. 675 (Sup. Ct. 1928); a motor truck chassis in Solomon v. Newark, 137 N.J.L. 247 (Sup. Ct. 1948), and an oil burner in Petterson v. Board of Education, Union City, 6 N.J. Misc. 374, 141 A. 924 (Sup. Ct. 1928). The distinction originally made between apparatus on the one hand and materials and supplies on the other was that in the case of the former "[t]here can be no standard specifications for such apparatus. Each manufacturer makes his apparatus under patents, processes or designs different from that of other manufacturers. It is these differences which support the claim of the superiority of apparatus made by each manufacturer over that manufactured by his competitors." Hahn Motor Truck Corp. v. Atlantic City, supra, 6 N.J. Misc., at p. 236.
We are satisfied that the patrol cars in question may be properly classified as apparatus, for which competitive bidding was not required. The proposals submitted by plaintiff called for two patrol cars to meet the needs of the municipal police department. While they specified 1966 Chevrolet 4 door sedans, each equipped with a 6-cylinder engine and standard transmission, they were required to be equipped with a number of additional items to make them suitable for use as police patrol cars. These included:
*75
 "police body equipment
 police chassis equipment
 heavy duty battery
 power steering
 washable interior vinyl trim
 heavy duty mats
 55 amp heavy duty alternator
 2% accurate speedometer
 (by manufacturer)
 670 x 15 rims and tires
 spot lights (2) dual
 install [flashing] dome light
 install siren"
We perceive no substantial distinction between the sale of an automobile which includes special apparatus to fit it for use as a police patrol car and the sale of a dump truck, Peter's Garage, Inc. v. Burlington, supra, or a truck chassis, Solomon v. Newark, supra.
Although the interpretation of the statute which exempted apparatus from its effects goes back to 1928 and the statute has been amended in a number of respects since that time, the Legislature has never seen fit to enlarge the adjudicated definition of "materials and supplies" to include either apparatus or motor vehicles. The absence of any amendment is evidence that such construction is in accord with the legislative intent. State v. Moresh, 122 N.J.L. 77, 79 (E. & A. 1939).
Affirmed. No costs.