262 N.J. Super. 384 (1993)
621 A.2d 59
426 BLOOMFIELD AVENUE CORPORATION T/A C & J TOWING SERVICE, PLAINTIFF-APPELLANT,
v.
CITY OF NEWARK, DEFENDANT-RESPONDENT, AND METROPOLITAN TOWING, J.V. AND K & K TOWING, INC., INTERVENING DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued February 9, 1993.
Decided February 23, 1993.
*385 Before Judges MICHELS, BILDER and BAIME.
George W. Fisher argued the cause for plaintiff-appellant (Mason, Griffin & Pierson, attorneys; Mr. Fisher, of counsel and on the brief).
Frederick Coles, III, Assistant Corporation Counsel, argued the cause for defendant-respondent (Michelle Hollar-Gregory, Corporation Counsel, attorney; Mr. Coles, on the brief).
Intervening defendant-respondent, Metropolitan Towing, J.V., submitted a brief (Harvey Fruchter, attorney; Richard A. Cohen, on the brief).
The brief of intervening defendant-respondent K & K Towing was suppressed.
The opinion of the court was delivered by BAIME, J.A.D.
The City of Newark contracts with private entities for the provision of vehicle towing and storage services. In 1991, the City adopted a resolution creating five towing districts and mandating that no single vendor be awarded more than one district contract. The effect of the restriction is to eliminate from consideration the lowest responsible bid with respect to *386 four of the five towing districts. We hold that the one district limitation discourages free, open and competitive bidding and subverts the objectives of the Local Public Contracts Law (N.J.S.A. 40A:11-1 through -49).

I.
The facts are not in dispute. Until recently, the City was divided into four towing districts corresponding with the geographical boundaries of its police precincts. Towing contracts were awarded for each district to the lowest responsible bidder. Bidding specifications did not prohibit a single bidder from being awarded the contract for more than one towing district.
On December 18, 1991, the City adopted a resolution which created five towing districts that coincide with the boundaries of its political wards. In addition, the resolution barred a single vendor from being awarded the contract for more than one district. Although vendors "may bid on all five wards[,] no bidder may hold more than one contract." The one district per vendor restriction was said to promote competition by increasing the number of available towing contractors. However, its effect is to bar a successful bidder in one district from being awarded a contract for another district even if it has submitted the lowest responsible bid and has satisfied all other specification requirements.
Plaintiff, a New Jersey Corporation engaged in the business of providing vehicle towing and storage services, instituted this action challenging the one district limitation. Metropolitan Towing, J.V. and K & K Towing, Inc. intervened, and, along with the City, filed answers in which they asserted that the bid specification comported with all applicable statutes. Following argument, the Law Division dismissed plaintiff's complaint on the basis that the one district restriction was not arbitrary and capricious. This appeal followed.

*387 II.
N.J.S.A. 40A:11-6.1 provides that "[a]ll purchases, contracts or agreements which require public advertisement for bids shall be awarded to the lowest responsible bidder." This section is supplemented by N.J.S.A. 40A:11-13 which states that "[a]ny specifications for an acquisition ... shall be drafted in a manner to encourage free, open and competitive bidding." These statutes "are for the benefit of the taxpayers and are construed as nearly as possible with sole reference to the public good." Terminal Const. Corp. v. Atlantic Cty. Sewerage Auth, 67 N.J. 403, 409-10, 341 A.2d 327 (1975). Their purposes "are to guard against favoritism, improvidence, extravagance and corruption" and "their aim is to secure for the public the benefits of unfettered competition." Id. at 410, 341 A.2d 327. The object of public bidding is "not the protection of the individual interests of the bidders but rather the advancement of the public interest in securing the most economical result by inviting competition in which all bidders are placed on an equal basis...." Tp. of River Vale v. R.J. Longo Const. Co., 127 N.J. Super. 207, 215, 316 A.2d 737 (Law Div. 1974). Notwithstanding the deference we generally accord to the actions of municipal governments, see, e.g., Kramer v. Bd. of Adjust., Sea Girt, 45 N.J. 268, 296, 212 A.2d 153 (1965); Miller v. Passaic Valley Comm'n, 259 N.J. Super. 1, 15, 611 A.2d 128 (App.Div. 1992); Agorganic v. Ocean County Utilities, 259 N.J. Super. 377, 388, 613 A.2d 511 (Law Div. 1992), our "long-standing judicial policy" in construing these statutes "has been to curtail the discretion of local authorities by demanding strict compliance with public bidding guidelines." Pucillo v. Mayor and Council of Borough of New Milford, 73 N.J. 349, 356, 375 A.2d 602 (1977). See, e.g., Hillside Twp. v. Sternin, 25 N.J. 317, 325-326, 136 A.2d 265 (1957); A.C. Schultes & Sons v. Haddon Tp., 8 N.J. 103, 108, 83 A.2d 896 (1951); Waszen v. City of Atlantic City, 1 N.J. 272, 283, 63 A.2d 255 (1949); Palamar Const., Inc. v. Tp. of Pennsauken, 196 N.J. Super. 241, 257, 482 A.2d 174 (App.Div. 1983); Stano v. Soldo Constr. Co., 187 *388 N.J. Super. 524, 535, 455 A.2d 541 (App.Div. 1983). As cogently expressed by Justice Francis in Hillside Twp. v. Sternin, "[i]n this field it is better to leave the door tightly closed than to permit it to be ajar, thus necessitating forevermore in such cases speculation as to whether or not it was purposely left that way." 25 N.J. at 326, 136 A.2d 265.
It is against this backdrop that we examine the City's one district limitation. Although the restriction initially may seem innocuous, closer scrutiny discloses its pernicious effect upon the statutory mandate that public contracts be awarded to the lowest responsible bidder. In our view, the one district limitation minimizes the potential benefit to the public and maximizes the possibility of corruption, collusion and favoritism. The effect of the restriction is to allow contracts in four of the five districts to be awarded to a vendor other than the lowest responsible bidder. Moreover, the limitation discourages low bids. As long as the vendor's bid falls within the range of the lowest five, it must be awarded a contract.
We first consider whether the one district restriction yields any public benefit to be derived by awarding the contract to the lowest responsible bidder. Clearly, it does not. Of necessity, only one towing district can obtain the greatest public benefit. Each of the four remaining towing districts can only receive an ever-dwindling and declining benefit. This is so because, unless the vendors submit identical bids, the contractor who submits the lowest bid will be awarded only one district. Under the restriction, the City may not award the contract for the second district to the lowest responsible bidder if it has previously been awarded the contract for the first district. As to the third district, the City must award the contract to the third highest bidder if the first and second lowest bidders were awarded contracts for the other two districts. The process continues, such that the fourth and fifth towing districts will receive ever declining public benefits because the City cannot award the contracts to vendors who have successfully competed for the *389 other districts. The net effect of the one district restriction is to debar what would be the lowest responsible bidder from being awarded the contract, thus depriving the City and its taxpayers of the cost-efficiencies sought to be promoted by the public bidding process.
The limitation maximizes the potential for corruption and collusion. The incentive for maintaining the secrecy of a vendor's bid is diminished if he knows that he can be awarded only one contract even though he has submitted the lowest responsible bid for all five of the towing districts. Instead, there is at least some incentive to collude with other prospective bidders so that the bid proposal will be substantially similar to the others and will insure that, with respect to the top five bidders, each will be awarded one district. Even were we to assume that this danger is conjectural, it is plain beyond peradventure that the incentive to submit the lowest bid is diminished by the one district limitation. As we pointed out earlier, in order to be awarded a contract, all that a vendor must do is submit one of the five lowest bids. The limitation eliminates the true successful bidder from consideration and thereby discourages cost-efficient bidding.
It is true, as the City argues, that the one district restriction prevents a monopoly by sharing the benefits of towing contracts among multiple towing services. However, the specifications accomplish this result by eliminating from consideration the vendor who would otherwise be the lowest responsible bidder. This "spread the wealth" objective serves the interests of private contractors but not those of the taxpayers.
The City also contends that it has a legitimate concern in diffusing the responsibility for towing. We agree that a municipality has an interest in assuring that towing services are adequate and efficient within a particular district. However, a municipality may not seek to achieve that purpose by eliminating a potential bidder from consideration in certain districts, even though that vendor would otherwise have the capacity to *390 provide adequate and efficient service in multiple districts. There are other means by which to insure efficient towing service, such as by requiring in the bid specifications the number of trucks which must be available in each district, the presence and size of the lots to be maintained by the operator, and the time period within which calls must be answered. As noted by plaintiff, the bid specifications in this case contain these very requirements. Stated somewhat differently, a municipality may assure efficient service in each district by requiring in its specifications that the prospective vendor devote adequate resources to this endeavor. It may not seek to achieve this objective by, in effect, eliminating from consideration what would otherwise be the lowest responsible bidder.
We thus conclude that the one district restriction, by eliminating from consideration the lowest responsible bidder, falls afoul of the Local Public Contracts Law.

III.
Alternatively, the City contends that towing contracts are exempt from the bidding requirements of the Local Public Contracts Law under an amendment which became effective on May 24, 1991. See L. 1991, c. 142, Assembly No. 3011. The amendment, which now appears in N.J.S.A. 40A:11-5(1)(u), provides in pertinent part as follows:
Any purchase, contract or agreement of the character described in section 4 of this act may be made, negotiated or awarded by the governing body without public advertising for bids and bidding therefor if:

(1) The subject matter thereof consists of:
(u) Contracting unit towing and storage contracts, provided that all such contracts shall be pursuant to reasonable non-exclusionary and non-discriminatory terms and conditions, which may include the provision of such services on a rotating basis, at the rates and charges set by the municipality pursuant to section 1 of P.L. 1979, c. 101 (C. 40:48-2.49). All contracting unit towing and storage contracts for services to be provided at rates and charges other than those established pursuant to the terms of this paragraph shall only be awarded to the lowest responsible bidder in accordance with the provisions of the "Local Public Contracts Law" and without regard for the value of the contract therefor. Each of the aforementioned means of contracting shall be *391 subject to any regulations adopted by the Commissioner of Insurance pursuant to section 60 of P.L. 1990, c. 8 (C. 17:33B-47).
N.J.S.A. 40:48-2.49 provides that a municipality seeking to avail itself of the towing exception to the Local Public Contracts Law must adopt an ordinance setting forth "non-discriminatory and non-exclusionary regulations" governing operators engaged in the business of removing and storing motor vehicles. Among other things, the regulations must include a schedule of fees for towing and storage, minimum standards of operator performance, and the designation of a municipal enforcement officer or agency. N.J.S.A. 40:48-2.49a, b and c. The City has advised us that it adopted an ordinance which satisfies all of these statutory requirements.
If the City was not required to adhere to the Local Public Contracts Law, it had the right to award the contracts in question to the bidder it felt would best serve the interests of its taxpayers. A.C. Schultes & Sons v. Haddon Tp., 8 N.J. at 107, 83 A.2d 896. "Even though the municipality actually advertised as it did here, nevertheless, if the [competitive bidding] statutes are inapplicable, there is no obligation on the [C]ity to award the contract to the low bidder." Id. at 108, 83 A.2d 896. "Where competitive bidding is not required by the applicable laws, but bids are nevertheless requested, the contract need not be let to the lowest bidder...." McQuillin, Municipal Corporations, § 29.73.10 at 510-11 (3d ed. rev. 1990). In such a case, "an award of the contract to a higher bidder ordinarily will not be set aside, except for fraud or abuse of discretion...." Ibid.
The Law Division did not consider whether the towing contracts in question were exempted from the Local Public Contracts Law under N.J.S.A. 40A:11-5(1)(u) and whether the City's ordinance met the requirements of N.J.S.A. 40:48-2.49. The point was not raised in the oral argument before that court. Under these circumstances, the interests of justice militate in favor of remanding the matter to the Law Division so that these issues can be fully explored.
*392 Accordingly, the order dismissing plaintiff's complaint is reversed and the matter is remanded to the Law Division for further proceedings consistent with this opinion. We do not retain jurisdiction.