IN THE MATTER OF PRIVATE CROSSING AT GRADE OF MAIN LINE TRACK OF THE CENTRAL RAILROAD COMPANY OF NEW JERSEY ON THE ALIGNMENT OF EAST 49TH STREET, BAYONNE, HUDSON COUNTY, NEW JERSEY.

CITY OF BAYONNE, APPELLANT, v. BOARD OF PUBLIC UTILITY COMMISSIONERS, DEPARTMENT OF PUBLIC UTILITIES, STATE OF NEW JERSEY AND THE CENTRAL RAILROAD COMPANY OF NEW JERSEY, RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Argued May 10, 1954—Decided May 21, 1954.

Before Judges CLAPP, FREUND and SCHETTINO.

*Mr. Alfred Brenner* argued the cause for the city.

*Mr. John R. Sailer* argued the cause for the Board (*Mr. Grover C. Richman, Jr.,* Attorney-General).

*Mr. William F. Hanlon* argued the cause for the railroad.

The opinion of the court was delivered by

CLAPP, S. J. A. D. The Board of Public Utility Commissioners ordered the Central Railroad Company of New Jersey to vacate and barricade the crossing over its tracks at grade at or near East 49th Street, Bayonne, N. J., because of the hazard to the public and those using the trains. Indeed, on the argument before us, it was admitted by the City of Bayonne that this probably was one of the most dangerous crossings in the State. The city appeals from the order. On the other hand the railroad urges us to sustain it.

The city's main point is that the board had no authority to close this crossing. The portion of East 49th Street containing the crossing had been vacated by the city in 1900 pursuant to an agreement then made between it and the railroad, by which the railroad agreed to erect certain underpasses and bridges on certain streets in consideration of Bayonne's vacation of other streets. Subsequently the railroad permitted persons to cross the tracks and in 1947

improved and paved the crossing. However, no argument is made on the appeal that anyone has an interest in the crossing through either prescription (the crossing was moved 80 feet in 1947) or otherwise. So it may be taken from the record, not only that this was a private crossing, but that the order here constitutes merely a direction to the railroad to barricade its own property.

■ ■ We think the board, by virtue of the jurisdiction and control, vested in it by *N. J. S. A.* 48:2–13 and 48:2–23 over the railroad's property, has the authority to order the railroad to barricade that property for the safety of the public and of persons using the trains. It has been said broadly that the board was given by the Public Utilities Act full control of all public utilities, so far as could be done by legislation. *Atlantic Coast Electric Ry. Co. v. Board of Public Utility Com'rs,* 92 *N. J. L.* 168, 175 (*E. & A.* 1918); *Perth Amboy v. Board of Public Utility Com'rs,* 98 *N. J. L.* 106, 108 (*Sup. Ct.* 1922); *cf.* as to crossings *Hollinshead v. Atlantic City R. Co.,* 102 *N. J. L.* 303 (*E. & A.* 1925). At any event the board, by force of the statutes cited, has a plenary power over railroad property in the interests of safety, and, indeed, is vested with a high and continuing public responsibility in that regard. *Cf. Paterson and Ramapo R. R. Co. v. Mayor and Aldermen of City of Paterson,* 81 *N. J. Eq.* 124, 129 (*Ch.* 1912); *Pennsylvania Railroad Co. v. Department of Public Utilities,* 14 *N. J.* 411, 425, 430 (1954); *Erie R. R. Co. v. Board of Public Utility Com'rs,* 89 *N. J. L.* 57, 78 (*Sup. Ct.* 1916), affirmed 90 *N. J. L.* 672, 673 (*E. & A.* 1917), affirmed 254 *U. S.* 394, 41 *S. Ct.* 169, 65 *L. Ed.* 322 (1920). And we therefore are satisfied that it lay within the authority of the board to make the order assailed here.

■ No cases are cited by the city, and the only statute relied upon by it is the second paragraph of *N. J. S. A.* 48:12–49. But that paragraph is inapplicable; the record does not disclose that a single individual owns land on both sides of the track here. *Marino v. Central R. Co.,*

69 *N. J. L.* 628 (*E. & A.* 1903); *Ellsworth v. Central R. Co.*, 34 *N. J. L.* 93 (*Sup. Ct.* 1869); cf. *Manda, Inc., v. Delaware, L. & W. R. Co.*, 84 *N. J. Eq.* 624, 630 (*Ch.* 1915).

In view of the conclusions reached, we need not look into the theory upon which the board seems to have based its decision, at least in part, namely, that *N. J. S. A.* 48:2–28 applies to a private as well as to a public crossing and that by virtue of that statute the board could now barricade the present crossing on the ground that the shifting of the crossing some 80 feet in 1947 was without its consent and constituted the making of "a new crossing."

The city's second point is that it and others have valuable interests in land lying east of the railroad, which will be made inaccessible by the barricade. Apparently the point is that the action of the board was therefore unreasonable. On the contrary, it seems to us that the city is merely placed in a position of being made to live up to its own agreement of 1900. We need not here examine into possible solutions of the problem, except to note that the railroad has apparently been quite conciliatory in its dealings on the matter.

Having in view the matter of safety, we do not think the action of the board can be held to be unreasonable. A crossing as dangerous to life as this, is a public nuisance, and as was said in *Paterson and Ramapo R. Co. v. Mayor and Aldermen of City of Paterson*, 81 *N. J. Eq.* 124, 127 (*Ch.* 1912), *supra*, " '* * * no man has a vested interest in the creation or continuance of such a nuisance.' "

Affirmed.