COUNTY OF UNION, A BODY POLITIC OF THE STATE OF NEW JERSEY, PLAINTIFF, v. JOHN T. BENESCH, SUPERINTENDENT, HOUSING AND INSPECTIONS, CITY OF ELIZABETH, NEW JERSEY, DEFENDANT.

Superior Court of New Jersey
Law Division

Decided November 28, 1967.

*Mr. Leonard Rubin,* Assistant County Counsel, for plaintiff (*Mr. Dominick A. Mirabelli,* County Counsel, attorney, *Mr. Rubin* on the brief).

*Mr. Edward W. McGrath,* City Attorney of Elizabeth, for defendant (*Mr. John R. Weigel,* Special Counsel, on the brief).

FELLER, J. S. C. This is an action in lieu of prerogative writs instituted by the County of Union in connection with the premises known as the Union County Parking Garage and Juvenile Detention Center. The county, having determined that certain repairs, rectifications and alterations are necessary to that structure, sought to have the City of Elizabeth issue a building permit, conduct inspections as the work progressed, and issue a certificate of occupancy upon completion of the work. The city, through its Superintendent of Housing and Inspections, refused to issue the permit for the reason that in the absence of statutory authority, municipal ordinances are not enforceable as to the county, and therefore the city has no authority to issue such a building permit. The county then instituted the present action seeking to compel the city to comply with the request for a building permit, inspections, and a certificate of occupancy upon completion of the work, all in accordance with the building code of Elizabeth. To that end cross-motions for summary judgment have now been filed by the respective parties.

Although the following question is not in issue in the present litigation, it was discussed briefly during the oral argument. It should be noted that the board of freeholders has authority under the statutes, *N. J. S. A.* 52:27C–54, *N. J. S. A.* 52:27C–55 and *N. J. S. A.* 52:27C–56, to adopt by resolution the Standard Building Code of the State of New Jersey as the building code of the County of Union:

"52:27C–54. Standard building code

The department of economic development, through its division of planning and engineering, shall prepare a code to be known as the standard building code of New Jersey and thereafter may prepare amendments altering it or adding to it.

52:27C–55. Scope of code

The code, or the same as amended, shall regulate the design, construction, repair, alteration, demolition and removal of buildings and structures *of every kind* within such municipalities as may adopt it *and shall govern such counties*, state boards, departments or other State agencies *as may adopt it*. Provision may be made in the code prohibiting, within certain limits, the construction, repair or alteration of buildings or structures with specified materials.

52:27C–56. Adoption of code by reference

Any municipality may adopt the code, and any amendments thereto, by ordinance, without incorporating the same in the ordinance; *provided*, reference is made therein to the code as the 'Standard Building Code of New Jersey' or, in the case of amendments, to the section numbers and dates of the amendments. In the same manner *any county*, State Board, department or other State agency may, *by* ordinance or *resolution*, adopt the code and amendments thereto." (Emphasis added)

This is the same building code that was adopted by the City of Elizabeth in 1964.

If this had been adopted by the County of Union, then the Superintendent of Housing and Inspection of Elizabeth would not be involved. The building permits, inspections and supervision, and the final approval of the repairs, rectifications and alterations would be by the superintendent, inspectors and personnel of the county and at the expense of the county. It would thus be the duty of those employed by the county to see that the proposed repairs and the completed repairs conformed to the Standard Building Code as adopted by the county.

If the code had been adopted by the board of freeholders, it would not be necessary to determine the present legal issue. However, the statute is not mandatory in its terms and a board of freeholders cannot be compelled to adopt the Standard Building Code. This court has been reliably informed that none of the 21 counties in this State have adopted the code, probably because of lack of facilities

to enforce the same. Apparently, the code was not adopted in Union County because of limited construction of county buildings in the past few years and also because of lack of facilities in Union County.

Since the Union County Board of Freeholders has not adopted the Standard Building Code of New Jersey, it is necessary to decide the issue presently before this court.

The main issue in this case is whether a county is subject to the provisions of a municipal building code and the necessity of obtaining a building permit. There are no reported court decisions applicable to the particular facts in this case and the present state of the law on this question is not clearly expressed in the statutes. As a result, this court readily understands the sharp differences of opinion that have existed with reference to this matter. Consequently, this court is satisfied that no presently existing statute precisely settles the matter and that the legislative intent must therefore be determined inferentially. *City of East Orange v. Palmer,* 47 *N. J.* 307, 313 (1966).

*N. J. S. A.* 40:48–1 (13) provides that the governing body of every municipality may make, amend, repeal and enforce ordinances to regulate and control the construction, erection, alteration and repair of buildings and structures of every kind within the municipality. This statute authorizes the adoption of a building code and the issuance of building permits. *Cox v. Wall Tp.,* 39 *N. J. Super.* 243, 246 (*App. Div.* 1956). The City of Elizabeth, by ordinance No. 112 passed January 14, 1964, adopted the standard Building Code of New Jersey as the building code of the city in accordance with the terms of *N. J. S. A.* 52:27C–54, 52:27C–55 and 52:27C–56, *supra.*

The garage that is the subject matter of this action is located in the ninth district of the city and in the C-3 (Central Commercial) zone. Garages are permitted in this zone and the proposed structure does not in any way violate the zoning ordinances of the city.

Permits to erect new buildings or to make material alterations or additions to existing buildings are usually required under municipal building codes or ordinances. The purpose of the requirement is to obtain compliance with these codes and ordinances, and also, in many instances, with zoning and fire district ordinances. Legislation of this general character, including permit and license requirements, has been regarded as useful, reasonable and essential to the welfare and prosperity of the community. The requirement of building permits is pursuant to and in the exercise of municipal police power. 9 *McQuillin, Municipal Corporations* (*3d ed.*), 26.200.

At oral argument it was stipulated by counsel that since a county is a higher level of government than a municipality, a municipality would have no control over the construction or repair of county buildings. It was further stipulated that such control may be exercised, however, when there is legislative authority to this effect. These stipulations were in accordance with the law in *Aviation Services v. Board of Adjustment of Hanover Tp.*, 20 *N. J.* 275, 282 (1955), in which the court held that where the immunity from local zoning regulation is claimed by any agency or authority which occupies a superior position in the governmental hierarchy, the presumption is that such immunity was intended *in the absence of statutory language to the contrary.*

Furthermore, it is interesting to note that in *Parking Authority of City of Trenton v. City of Trenton*, 40 *N. J.* 251, 256 (1963), the court took notice that *N. J. S. A.* 40:23–6.20 (which plaintiff relies on) is an example of the statutory language to the contrary. The court stated that the Legislature has provided for the exemption of certain counties from the requirement of paying a fee for a municipal building permit in connection with the construction of county buildings. *N. J. S. A.* 40:23–6.20. This statute reads:

"No county having a population in excess of four hundred thousand inhabitants other than a county of the first class, or the board of chosen freeholders thereof or any of its contractors, shall be required to pay any municipal fee or charge in order to secure a building permit for the erection or alteration of any county building or part thereof from the municipality wherein such building may be located."

 Union County is a county of the second class with a population in excess of 400,000. *N. J. S. A.* 40:17–2. Under the terms of the statute, the county does not have to pay a fee for a building permit. This being so, the necessary inference is that Union County must secure a building permit. Another conclusion that may be inferred from the statute is that counties of the first class must pay for a building permit, and therefore it is also logical that such counties must and have a right to obtain a building permit from the local municipality. The same conclusion must be drawn as to counties with a population of less than 400,000 inhabitants.

If the county were not required to secure a building permit, the Legislature, by eliminating the necessity for the payment of a fee for the same, would have adopted useless legislation. If a county did not have to obtain a building permit, there would be no need for a statutory provision in regard to a fee for such building permit.

 The courts cannot impute to the Legislature an intent to enact meaningless legislation. There is a presumption against useless legislation, *Town of Hammonton v. Varsaci*, 74 *N. J. Super.* 251 (*App. Div.* 1962) ; *Magierowski v. Buckley*, 39 *N. J. Super.* 534 (*App. Div.* 1956), and it is not to be assumed that the Legislature intended to adopt a nugatory act. *Buska v. Aquinaldo*, 84 *N. J. Super.* 577, 586 (*Cty. Ct.* 1964). Thus, when it is argued that the County does not need a building permit, then the Legislature, in enacting *N. J. S. A.* 40:23–6.20, *supra*, eliminating the necessity of the payment of a fee for a building permit, would have adopted useless legislation if a permit were not needed. Obviously, it becomes an implied intention

or inference that in all other cases, except those as expressed in the statute, a fee would have to be paid, and if a fee must be paid, a permit must be required.

 ■ A statute often speaks as plainly by inference as by express words. Matters which are so clearly implied are considered an integral part of the enactment itself. *In re Village of Loch Arbour,* 25 *N. J.* 258, 262 (1957) and in *City of East Orange v. Palmer, supra,* 47 *N. J.,* at *p.* 313, the court stated that no presently existing enactment precisely settled the matter and that the legislative intent must therefore be determined inferentially. Consequently, with reference to the statute under consideration *N. J. S. A.* 40:23–6.20, it is necessary that the legislative intent be determined inferentially. *Juzek v. Hackensack Water Co.,* 48 *N. J.* 302, 314 (1966); *Giles v. Gassert,* 23 *N. J.* 22 (1956); *Alexander v. New Jersey Power & Light Co.,* 21 *N. J.* 373, 379 (1956); *Luria v. United States,* 231 *U. S.* 9, 34 *S. Ct.* 10, 58 *L. Ed.* 101 (1913).

 ■ Furthermore, in construing statutory provisions, resort may freely be had to the pertinent legislative history for aid in ascertaining the true sense and meaning of the language used. *Lloyd v. Vermeulen,* 22 *N. J.* 200, 206 (1956). Accordingly, we may freely refer to the history of this legislation for whatever aid it may furnish in ascertaining its true purpose and meaning. See *State by Richman v. Sperry & Hutchinson Co.,* 23 *N. J.* 38, 42 (1956).

 A brief review of the legislative history in the present case seems to support the conclusion of this court as to legislative intent in the enactment of *N. J. S. A.* 40:23–6.20. On February 2, 1948 *Senate Bill No.* 122 was introduced:

"An Act concerning counties, and supplementing chapter twenty-three of Title 40 of the Revised Statutes
 1. BE IT ENACTED by the Senate and General Assembly of the State of New Jersey
 1. No county or its board of chosen freeholders shall be required to secure the approval of its plans and specifications for the erection or alteration of any county building or part thereof by the municipality wherein such building may

be located; nor shall any county or its board of chosen freeholders or any contractor doing work in connection with county buildings be required to secure a building permit for such work from the municipality.

2. This act shall take effect immediately."

### STATEMENT

The purpose of this act is to remove any doubt which may exist concerning the obligation of a county to obtain local building permits."

This bill was referred to the Senate Committee on Counties and Municipalities. The bill apparently was rejected by the committee, which reported out a bill known as *Committee Substitute for Senate No.* 122. This Committee Substitute passed both Houses and was approved by the Governor on September 22, 1948. It became *chapter* 413 of the *Laws of* 1948 (*N. J. S. A.* 40:23–6.20), the statute under consideration.

Thus, it is evident that the Senate committee rejected the bill which by its very terms would have eliminated the necessity for a county to obtain a local building permit, or secure the approval of its plans and specifications for the erection or alteration of county buildings by the municipality where such buildings were located. The committee substitute that was enacted into law provided only that certain counties did not have to incur any expense in securing building permits. This would seem to indicate, after a review of the legislative history, that the Legislature recognized the obligation of counties to secure building permits.

When this statute was originally introduced as a committee substitute there was no statement attached to the same explaining why counties with a population in excess of 400,000 inhabitants, other than counties of the first class, were not required to pay a municipal fee for a building permit. However, the wisdom of the statute is not for the court to determine. *In re Village of Loch Arbour, supra.* It is not the function of the court to sit as a super-legislature or concern itself with the wisdom of policy underlying a

statute. *Supermarkets General Corporation v. Sills,* 93
*N. J. Super.* 326 (*Ch. Div.* 1966); *Hudson County News
Co. v. Sills,* 41 *N. J.* 220, 229 (1963).

Defendant further contends that assuming *arguendo* that
the County of Union must secure a building permit, this
does not contemplate the making of inspections while the
work is in progress, nor does it contemplate the issuance of
a certificate of occupancy when the work is completed.
Defendant bases this argument on the provisions of the
statute, *N. J. S. A.* 40:23–6.20, which only provides for
the securing of a building permit and does not contain any
provision for inspection or the issuance of a certificate of
occupancy. The court does not agree with this contention.

The purpose of requiring a permit is to enable the munic-
ipality to make sure that the proposed building conforms to
the pertinent ordinances. Provisions for permits are for
the benefit of the municipality, not the property owner.
The most that a property owner may claim from a permit
is that it is an acknowledgement by a public official that
when the permit was issued, the proposed building con-
formed to the pertinent ordinance. *Tremarco Corp. v. Garzio,*
55 *N. J. Super.* 320, 326 (*App. Div.* 1959), reversed on
other grounds 32 *N. J.* 448 (1960). See also *Yahnel v.
Board of Adjustment of Jamesburg,* 76 *N. J. Super.* 546,
553 (*Law Div.* 1962). The plans and specifications filed
with a building permit application enable the building in-
spector to determine whether the structure as proposed con-
forms to the requirements of the building code. 2 *Rathkopf,
Law of Zoning and Planning,* c. 55, § 2, *p.* 2. In fact, the
reason a municipal fee is usually charged upon the issuance
of the building permit is to cover the expense of the filing,
examination of plans and specifications, inspection of the
work done and the issuance of the certificate of occupancy.
*Ibid, c. 55,* § 6, *p.* 15.

█ This would indicate that the issuance of the building
permit contemplates inspections and the issuance of a cer-
tificate of occupancy in accordance with the terms of a

building code. Such certificate of occupancy is complementary to a building permit. The building permit states, in effect, that what the applicant proposes to do will be in conformity with the pertinent ordinance provisions; the certificate of occupancy certifies that what has actually been done meets municipal requirements, and an occupancy permit may be required not only in the case of new buildings but also where there is a reconstruction of a building or a change in the use therein. 2 *Rathkopf, op. cit.,* c. 55, § 7, *p.* 20. Where a building permit is issued in accordance with the provisions of a municipal building code, the code becomes applicable in its entirety with its provisions for inspection and the necessity for the issuance of a certificate of occupancy. See *Tremarco Corp. v. Garzio, supra; Rathkopf, op cit.*

The Standard Building Code of New Jersey adopted by the City of Elizabeth in 1964 as the municipal building code provides for the issuance of permits, inspection of plans and specifications, periodic inspections during the progress of construction, and the issuance of a certificate of occupancy after inspection and investigation reveal that what has been done conforms to the requirements of the building code. See sections B–113.0, 113.1, 113.3, 115.6, 116.1, 116.3, 116.5, 116.7, 116.8, 110.0, 118–3 of said building code.

A certificate of occupancy is merely a tangible manifestation of proper use of one's property in accordance with the ordinance in question. Before it can issue the building inspector is obliged to view and examine the premises to determine conformity with all appropriate regulations. *Honigfeld v. Byrnes,* 14 *N. J.* 600, 608 (1954). The issuance of a building permit would be meaningless if the municipality did not have the authority and duty to make periodic inspections during the course of construction and to issue a certificate of occupancy when the inspection revealed that the work done conformed to the requirements of the building code.

Control, management and government of property owned by a county by the board of freeholders is unquestioned after a particular structure has been completed. However, during the progress of construction this control or management must be exercised in conjunction with the local building personnel and in compliance with the local building code. In other words, building codes are police matters to protect health and property. The planning of the building during construction and repairs, in all matters other than matters covered by the building code, is left with the county authorities.

The city attorney in his brief and at oral argument very properly pointed out the various statutes (other than *N. J. S. A.* 52:27C–54; 52:27C–55; 52:27C–56, *supra*) which provide for the government, control and management of county property by the board of freeholders, or by various committees and personnel of the county, as authorized by statute.

However, no standards of construction and repair of county buildings have been provided for in these statutes, nor are the various counties authorized to set up any such standards by any enabling legislation. There is nothing in these statutes which suggests any authority to prescribe a building code and, as stated above, building codes are police matters to protect health and safety. Furthermore, there is no evidence before this court that any such standards were provided for. Standards of construction are necessary for public health and safety. This court cannot believe that it was the intention of the Legislature to leave such police matters without any prior standards having been authorized or provided for similar to *N. J. S. A.* 40:48–1(13), *supra,* applicable to municipalities.

Since the county has not adopted the Standard Building Code of the State of New Jersey, and the city of Elizabeth has, if the municipality's code is not made applicable to these repairs under the provisions of *N. J. S. A.* 40:23–6.20, *supra,* then there would be no building code applicable and

there would be no conditions or requirements that the county is authorized to adopt to control the repair of county buildings. Thus there would be no objective legal standards which a county might provide, to serve as a guide in determining whether or not such repairs conform to public health and safety requirements. See *Cedar Rapids Community School District v. City of Cedar Rapids*, 252 *Iowa* 205, 106 *N. W. 2d* 655 (*Iowa Sup. Ct.* 1960).

Furthermore, *N. J. S. A.* 40:48–1(13), *supra*, authorizes every municipality to pass ordinances to regulate and control the construction and repair of buildings and structures *of every kind* within the municipality, and *N. J. S. A.* 52: 27C–55, *supra*, which authorizes the adoption of the State Building Code by municipalities, etc., has a similar provision. These statutes, read together with *N. J. S. A.* 40:23–6.20, *supra*, which in effect requires counties to secure building permits, would seem to make the building code applicable to county buildings. The building code of Elizabeth applies to "all buildings and structures," and this would include county buildings under the circumstances of this case.

There is no doubt whatever as to the power of the Legislature to immunize its public authorities from the provisions of local zoning and building restrictions. See *Jersey City v. Martin*, 126 *N. J. L.* 353 (*E. & A.* 1941); *City of Newark v. New Jersey Turnpike Authority*, 7 *N. J.* 377 (1951); *Town of Bloomfield v. New Jersey Highway Authority*, 18 *N. J.* 237 (1955). In the present case, however, it is evident that the Legislature, by enacting *N. J. S. A.* 40:23–6.20, *supra*, did not immunize the county from the provisions of the local building code. See also *N. J. S. A.* 40:48–1(13), and *N. J. S. A.* 52:27C–55, *supra*.

The question has been raised as to what the situation would be if the county decided to construct a county building in a small municipality which does not have a building code. The question is not under consideration here and will have to be decided if and when the issue should arise. However, such action would be under the control of the

board of freeholders and would be the responsibility of said board. In the present case we are considering the question of repairs and renovations of a county building in the City of Elizabeth, a municipality that has adopted the Standard Building Code.

Therefore, defendant will be ordered to issue a building permit to plaintiff to make rectification, repairs and alterations to the Union County Parking Garage and Juvenile Detention Center, provided that the plans and specifications filed comply with the provisions of the building code. Defendant will also be ordered to make the necessary inspections in accordance with the Elizabeth Building Code as the rectification, repairs and alterations proceed. Defendant will be further ordered, upon completion by plaintiff of the rectification, alterations and repairs, in accordance with the local building code, to issue a certificate of occupancy.

Therefore, plaintiff's motion for summary judgment is granted and defendant's denied.