146 N.J. Super. 243 (1976)
369 A.2d 923
JERSEY CITY INCINERATOR AUTHORITY AND CITY OF JERSEY CITY, APPELLANTS,
v.
DEPARTMENT OF PUBLIC UTILITIES OF NEW JERSEY AND BOARD OF PUBLIC UTILITIES COMMISSIONERS OF NEW JERSEY, RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued November 29, 1976.
Decided December 30, 1976.
*246 Before Judges BISCHOFF, MORGAN and E. GAULKIN.
Mr. Lewis M. Holland argued the cause for appellant Jersey City Incinerator Authority (Messrs. Chasan, Leyner, Holland & Tarrant, attorneys).
*247 Mr. Michael F. Rehill argued the cause for appellants City of Jersey City and City Council of City of Jersey City (Mr. Donald J. Williamson, attorney).
Ms. Carla Vivian Bello, Deputy Attorney General, argued the cause for respondent Board of Public Utility Commissioners (Mr. William F. Hyland, Attorney General of New Jersey, attorney; Mr. Stephen Skillman, Assistant Attorney General, of counsel).
Mr. Norman A. Doyle, Jr., argued the cause for respondent Town of Kearny.
The opinion of the court was delivered by BISCHOFF, J.A.D.
These consolidated appeals require a determination of whether the Board of Public Utilities Commissioners (PUC) has jurisdiction over a municipal incinerator authority so as to compel it to continue to operate its solid waste facility and incinerator until permission to discontinue its operation is granted by the PUC pursuant to N.J.S.A. 48:2-24.
The statutes are silent on this issue and, thus, the resolution of it must rest upon the result of our search for the often elusive "legislative intent."
The Jersey City Incinerator Authority (Authority) was created under the Incinerator Authority Law (N.J.S.A. 40:66A-1 et seq.). The Authority constructed an incinerator plant in 1957 following a sale of bonds. The plant was thereafter operated, using Authority personnel and equipment, until October of 1967 when the Authority entered into a negotiated contract (i.e., without seeking competitive bids) with North Jersey Incinerator Company (North Jersey) for the operation of the plant. In accordance with the terms of the contract the Authority sold all of its trucks and equipment to North Jersey for $68,000. The operating personnel of the Authority were employed by North Jersey. While this contract was later invalidated because *248 it was not awarded on the basis of competitive bids, the vehicles and equipment were never returned to the Authority.
After invalidation of the 1967 contract with North Jersey in January 1968, the Authority complied with statutory bidding requirements and awarded North Jersey a contract for operation of the incinerator plant. Since then the Authority's function has been limited to (1) financing and supervising performance of its contract with North Jersey for operation of the incinerator, and (2) supervising a contract with Hudson City Sanitation Company for scavenging in Jersey City. The annual budget of the Authority, which was $3,410,774 in 1971, is underwritten by the City of Jersey City.
The Solid Waste Utility Control Act of 1970 (N.J.S.A. 48:13A-1 et seq.) charges PUC with "the duty of setting and enforcing standards and rates for regulating economic aspects of solid waste collection, disposal and utilization services." N.J.S.A. 48:13A-2.
For many years the incinerator had been operated in violation of state air pollution codes and, commencing in November 1970, in violation of many orders of the Department of Environmental Protection (DEP) to cease emitting smoke into the atmosphere. When the Authority failed to comply with these orders, DEP brought suit in 1972 against the Authority and North Jersey seeking to enjoin the air pollution at the incinerator plant.
The difficulties encountered in attempts to bring the plant into compliance with state and federal emission standards culminated in the city engaging consultants to analyze the incinerator and report on its potential for compliance with State pollution control codes. The consultants concluded that the plant could not be improved and operated in such a manner as to comply with anti-pollution codes.
On November 6, 1974 the Authority passed a resolution which preliminarily recited that:
*249 (1) the incinerator plant is in serious violation of air pollution control codes and cannot be upgraded so as to conform to the codes;
(2) it was not economically or environmentally feasible to construct a new plant, and
(3) continued operation of the plant would be harmful to the atmosphere and constituted a serious hazard to the health of the surrounding area.
The resolution contained references to other factors not here germane and then resolved that:
(1) the executive director/secretary of the Authority "is directed to advise the collection contractor Hudson City Sanitation Company to collect, transport and deliver all solid waste collected from the City of Jersey City to the Municipal Sanitary Landfill in Kearny," and
(2) the executive director of the Authority, "upon the exercise of his discretion is directed to advise North Jersey Incinerator Company to stop the incineration of solid waste."
Operation of the incinerator was terminated.
On November 12, 1974 PUC ordered the immediate re-opening of the plant and directed both the Authority and North Jersey to show cause:
(1) why the order to operate the plant should not be made permanent;
(2) why they had not petitioned for permission to discontinue or curtail operation pursuant to N.J.S.A. 48:2-24 and N.J.A.C. 14:3-10.11, and
(3) why the matter should not be referred to the Attorney General for prosecution, leading to the imposition of appropriate fines and penalties pursuant to N.J.S.A. 48:13A-12.
On November 18, 1974 the City of Jersey City (city), by resolution, adopted and ratified the action of the Authority and petitioned for leave to intervene before the PUC, which was granted. Following a hearing, PUC rendered a decision holding that both the Authority and North *250 Jersey were public utilities within the scope of Title 48 and, as such, they could not discontinue service without prior PUC permission and directed that:
(1) operation of the incinerator be resumed, and
(2) an appropriate petition for leave to discontinue operation be filed.
Both the Authority and the city filed separate notices of appeal.
On June 2, 1975 this court granted a stay of the order of PUC conditioned upon the Authority's filing a petition for leave to discontinue operation of the incinerator. Such a petition was filed and proceedings thereon were conducted simultaneously with the completion of the record and briefs on the appeals to this court.
We stayed the appeals pending completion of the hearing on the petition for discontinuance. At the termination of those proceedings PUC issued a decision and order, dated May 3, 1976, making the following findings:
1. The cost of re-opening and operating the incinerator now would be prohibitive.
2. Reasonable alternate service is presently available and, based upon the implementation of the Hackensack Meadowlands Commission's master plan, should remain available for the foreseeable future at reasonable cost.
3. The public interest does not now require the re-opening of this facility.
4. The Authority discontinued service at this incinerator on November 7, 1974 without petitioning for, or receiving the permission of this Board as required by law. N.J.S.A. 48:13A-1, etc., N.J.S.A. 48:2-24, and N.J.A.C. 14:3-10.11(b).
5. The Authority failed to re-open the incinerator facility notwithstanding the Board's Order of November 12, 1974 and notwithstanding the Board's Order of March 27, 1975. It also failed to avail itself of the option in the latter order of filing for discontinuance with the Board and therefore staying the implementation of the Order to re-open. After direction from the Appellate Division, Superior Court, some eight months after the unilateral closing, the Authority petitioned the Board for discontinuance of service.
6. The Council, by its resolution of November 18, 1974 adopted and ratified the Authority's action in closing the facility and refused to permit solid waste to continue to be incinerated at *251 the facility in violation of the Board's Order of November 12, 1974. N.J.S.A. 48:2-24.
The decision granted permission to discontinue the solid waste service at the incinerator and, further:
[I]n the event our exercise of jurisdiction herein is affirmed, the Board HEREBY ASSESSES a penalty of $1,000.00 against the Jersey City Incinerator Authority and a penalty of $2,500.00 against the City Council of Jersey City for the reasons expressed herein, for violation of N.J.S.A. 48:2-42 [48:2-24] for ordering, authorizing and requiring the discontinuance of utility service at the incinerator in question without prior Board approval * * *.
The city and the Authority appeal from the assessment of penalties and all appeals have now been consolidated.
The precise and rather narrow issue presented is whether the Authority, having been created pursuant to N.J.S.A. 40:66A-1, is subject to the jurisdiction of PUC so that it can be compelled to continue the operation of its incinerator.
The general grant of jurisdiction to PUC is contained in N.J.S.A. 48:2-13, which provides in pertinent part:
The board shall have general supervision and regulation of and jurisdiction and control over all public utilities as hereinafter in this section defined and their property, property rights, equipment, facilities and franchises so far as may be necessary for the purpose of carrying out the provisions of this Title.
The term "public utility" shall include every individual, co-partnership, association, corporation, or joint stock company, their lessees, trustees or receivers appointed by any court whatsoever, their successors, heirs or assigns, that now or hereafter may own, operate, manage or control within this State any railroad, street railway, traction railway, autobus, charter bus operation, special bus operation, canal, express, subway, pipeline, gas, electric light, heat power, water, oil, sewer, solid waste collection, solid waste disposal, telephone or telegraph system, plant or equipment for public use, under privileges granted or hereafter to be granted by this State or by any political subdivision thereof.
This statute has been held to vest jurisdiction in PUC over private corporations only and not over municipal corporations. In In re Glen Rock, 25 N.J. 241 (1957), the court, in construing this statute, said:
*252 We conceive from the context in which the word is used that it applies only to private corporations. A municipal corporation is of an entirely different nature, and it is probable that the Legislature would have expressly specified municipal corporations if it had intended to give the Board jurisdiction over them. [at 246]
It was there held that where a municipality acquired before 1929 a water distribution system which served users in an adjoining municipality, rates charged to nonresident users were not subject to the regulatory power of the Board of Public Utility Commissioners.
That specific holding was first eroded in In re Complaint of Morris Tp., 49 N.J. 194 (1976), and finally overruled in North Wildwood v. Wildwood Bd. of Comm'rs., 71 N.J. 354 (1976). However, these later cases dealt with the construction of a specific statute conferring jurisdiction on PUC to regulate rates for water distributed by a municipally owned and operated distribution system to consumers beyond its borders. N.J.S.A. 40:62-49(f). The principle that municipal corporations are not included within the scope of N.J.S.A. 48:2-13 was neither disapproved nor questioned, and we consider it still viable.
While the powers delegated to the Board of Public Utility Commissioners have always been broadly construed and any exception thereto carefully subscribed, In re Public Service Elec. and Gas Co., 35 N.J. 358, 371 (1961); Deptford Tp. v. Woodbury Terrace Sewerage Corp., 54 N.J. 418, 424 (1969); Atlantic Coast Electric Ry. Co. v. Public Utility Bd., 92 N.J.L. 168 (E. & A. 1918); In re Central Ry. Co., 30 N.J. Super. 520 (App. Div. 1954), the statutes conferring jurisdiction on PUC have not been broadly construed. In re Glen Rock, supra; cf. Woodside Homes, Inc. v. Morristown, 26 N.J. 529, 537 (1958).
The determination that municipal corporations are not included within the general grant of jurisdiction to PUC, first appearing in the case of Ridgewood v. Hopper, 13 N.J. Misc. 775, 181 A. 150 (Sup. Ct. 1935), aff'd o.b. 116 N.J.L. 413 (E. & A. 1936), and reiterated in In re Glen Rock, *253 supra, has thus been extant since 1935 and has not provoked the enactment of any legislation indicating a contrary intent. We may consider the legislative silence as acquiescence in this construction of the statute. Miller v. Hudson Cty. Bd. of Freeholders, 10 N.J. 398, 413 (1952); Barringer v. Miele, 6 N.J. 139, 144 (1951); State v. Moresh, 122 N.J.L. 77, 79 (E. & A. 1939); cf. Closter Service Stations, Inc. v. Ridgefield Park Bd. of Comm'rs, 99 N.J. Super. 69, 75 (App. Div. 1968).
Furthermore, PUC has recognized the need for specific statutory inclusion within the PUC jurisdiction of municipal corporations by its own regulations, which define "public utility" as:
"Utility" has the same meaning as defined in N.J.S.A. 48:2-13 and includes pipeline utilities as defined in N.J.S.A. 48:10-3, and municipally-operated utilities, insofar as the Board's jurisdiction is extended to them under the appropriate statutes. [N.J.A.C. 14:3-1.1]
When in the past the Legislature has intended to give PUC jurisdiction over a function of a local government, it has indicated that intent by the enactment of a specific statute. Examples are: N.J.S.A. 40:62-24 ("Every municipality in supplying electricity, gas, steam or other product beyond its corporate limits is hereby declared to be a public utility"[1]; N.J.S.A. 40:14B-20(6), wherein PUC is given authority to approve a request by a municipality to purchase water at retail from a municipal water authority created pursuant to N.J.S.A. 40:14B-1 et seq.; N.J.S.A. 40:62-85.2, recently amended to explicitly provide for PUC jurisdiction "whenever any municipality solely owning or controlling waterworks or its own water supply is supplying water to the inhabitants of * * * any other municipality," *254 and N.J.S.A. 40:62-1, requiring every municipality operating any form of public utility service to keep records and accounts in a manner directed by the PUC and file with the Board such statement as shall be required by PUC. If it were the intent of the Legislature that a municipality furnishing utility services should be subject to the general jurisdiction of PUC, this section of the statute and the previously cited enactments would be unnecessary. See also, N.J.S.A. 40:62-21, 23, 25, and N.J.S.A. 40:14B-20(6).
Recognizing as we do this grant of jurisdiction over municipal corporations in specific instances, we cannot infer general jurisdiction in PUC over municipal corporations based on N.J.S.A. 48:2-13.
PUC argues that the Solid Waste Utility Control Act of 1970 (N.J.S.A. 48:13A-1 et seq.) confers jurisdiction upon it over any "person" engaging in the business of solid waste disposal (N.J.S.A. 48:13A-6[2]) and that the word "person" as used therein includes a municipality. We disagree. We do not see any indication that the Legislature intended the word "person" to be so broadly defined. The statutes we have heretofore cited indicate that whenever the Legislature intended to include a municipality within the regulatory powers of PUC, it specifically said so.
Nor can PUC validly rest its claim to jurisdiction over the Authority here on the failure of the Legislature to exclude a municipality from the statutes regulating solid waste disposal. N.J.S.A. 48:13A-1 et seq. (Solid Waste Utility Control Act of 1970); N.J.S.A. 13:1E-1 et seq. *255 (Solid Waste Management Act (1971)). PUC has only such jurisdiction as is conferred upon it. It does not have all-inclusive jurisdiction, with the exception of that specifically exempted.
PUC further argues that the State preemption of regulation in the field of solid waste evidences a legislative intent that the collection, disposition and utilization of solid waste be controlled by the PUC, and it relies on the cases of Ringlieb v. Parsippany-Troy Hills Tp., 59 N.J. 348 (1971), and South Ocean Landfill v. Ocean Tp. Mayor and Council, 64 N.J. 190, 194 (1974). We do not agree. The court in Ringlieb was not faced with a question of PUC control over municipally-owned and operated waste facilities. It was concerned with the respective spheres of state and municipal control over privately-owned and operated solid waste utilities. In that case and in the case of Pleasure Bay Apts. v. Long Branch, 66 N.J. 79 (1974), the issue was the extent of the power of the municipalities to regulate the industry when confronted with a claim of preemption by the State, and not with a delineation of the scope of jurisdiction of PUC.
The Legislature has placed in the municipalities broad power to provide for collection and disposal of ashes, refuse and waste material, N.J.S.A. 48:13A-1 et seq.; N.J.S.A. 40:66A-35 et seq.; N.J.S.A. 40:66A-1 et seq., thus granting a fundamental or sovereign power to the municipalities. Such powers should not be subordinated to PUC jurisdiction by inference. While the Legislature could have delegated jurisdiction to PUC to override and control this fundamental power delegated to the municipalities, it has not done so. Cf. In re South Lakewood Water Co., 61 N.J. 230 (1972).
Apart from any other considerations, PUC here seeks a declaration that it has jurisdiction to order a municipal corporation which owns a solid waste incinerator to continue to operate it. Such jurisdiction, if present, would *256 transcend the power to regulate rates for consumer protection and infringe upon the power of a municipality to regulate and manage its internal affairs. Where, as here, the city has been underwriting the cost of operation of the facility, and continued operation would require the expenditure of vast sums to upgrade the facility to conform to air safety standards, such an order would directly involve the fiscal affairs of the municipality. A grant of such power is not to be lightly implied. It must be firmly anchored in some clear legislative delegation of jurisdiction.
We find no such delegation here and conclude that PUC does not have jurisdiction to compel the Authority to continue to operate the incinerator and that the provisions of N.J.S.A. 48:2-24 do not apply to the Authority.
PUC relies on the case of Bergen Cty. v. Dept. of Pub. Util. of N.J., 117 N.J. Super. 304 (App. Div. 1971), which holds that PUC has jurisdiction over rates established by a county for the use of the county's sanitary landfill disposal site. Such reliance is misplaced. Assuming that case was correctly decided on the issues then presented, there is a distinction between the power to regulate rates for consumer protection, as was involved in that case, and the asserted power to compel a municipality to operate an incinerator plant with its attendant financial problems, which is the issue here presented[3].
We accordingly reverse the orders of PUC of November 12, 1974 and May 3, 1975, directing the Authority to continue operating the incinerator and directing it to apply for permission to discontinue operation.
*257 We also reverse the order of May 13, 1976, imposing penalties upon both the Authority and the city for the unilateral discontinuance of service and subsequent defiance of the Board's order to resume service.
NOTES
[1] See In re Glen Rock, 25 N.J. 241, 246-247 (1957), where "or other product" was interpreted narrowly to include only those products which might be developed for light, heat or power purposes.
[2] N.J.S.A. 48:13A-6 provides: "No person shall engage, or be permitted to engage, in the business of solid waste collection or solid waste disposal until found by the board to be qualified by experience, training or education to engage in such business, is able to furnish proof of financial responsibility, and holds a certificate of public convenience and necessity issued by the Board of Public Utility Commissioners. No certificate shall be issued for solid waste collection or solid waste disposal until the proposed collection or disposal system has been registered with and approved by the State Department of Environmental Protection as provided by law."
[3] It is significant that the grant of power to the PUC in the Solid Waste Utility Control Act of 1970 (N.J.S.A. 48:13A-2) relates to the duty of "setting and enforcing standards and rates for regulating economic aspects of solid waste collection, disposal and utilization services." This is more restrictive than the general grant of power contained in N.J.S.A. 48:2-13 which does not embrace the power to regulate a municipal utility.