275 N.J. Super. 614 (1994)
646 A.2d 1140
LIANNA CROSWELL, PLAINTIFF,
v.
TARIK SHENOUDA, DEFENDANT.
Superior Court of New Jersey, Chancery Division Family Part, Hudson County.
May 6, 1994.
*616 Claudette L. St. Romain, for plaintiff (Timothy K. Madden, Director, Hudson County Legal Services Corporation, attorney).
Anthony P. Peduto, for defendant.
JOSE L. FUENTES, J.S.C.
This case has come before the court on the return date of a temporary restraining order issued pursuant to the Prevention of Domestic Violence Act of 1991, N.J.S.A. 2C:25-17 to -33 (hereinafter, "the Act"). It raises a number of issues arising under that provision of the Act which defines who will be entitled to its protections. Specifically, the court must decide whether plaintiff is a "victim of domestic violence" pursuant to the Act where: (1) the parties have never been married; (2) they have never resided together; (3) plaintiff terminated the only pregnancy of which defendant admits paternity, and (4) defendant denies paternity of the child who plaintiff claims they now have in common. This matter also requires the court to decide if it has the authority to continue a temporary restraining order until a fact which will determine the existence or nonexistence of subject matter jurisdiction is established. Further, it must determine whether or not a defendant is entitled to a trial by jury as to the question of *617 paternity, when that issue is raised within proceedings brought pursuant to the Act.

PROCEDURAL HISTORY
On April 7, 1994, plaintiff filed a domestic violence complaint against defendant, alleging that he had committed acts of terroristic threats and harassment against her. She asserted that she and defendant have a child in common, and on that jurisdictional basis, and based on defendant's alleged acts against her, she received a domestic violence temporary restraining order against defendant. On April 22, 1994, the return date of the temporary restraining order, plaintiff testified to acts committed by defendant which I found rose to the level of harassment pursuant to N.J.S.A. 2C:33-4, and criminal mischief pursuant to N.J.S.A. 2C:17-3. Defendant chose not to testify, so that plaintiff's assertions as to the acts of domestic violence were undisputed. In fact, defendant, through counsel, asserted that he would consent to the entry of the restraints. However, it was then revealed that defendant denied paternity of the child. Because that was the jurisdictional basis upon which the complaint was taken and the temporary restraints issued, the court raised the issue of lack of subject matter jurisdiction sua sponte, since:
The principle is well established that a court cannot hear a case as to which it lacks subject matter jurisdiction even though all parties thereto desire an adjudication on the merits.... Such jurisdiction must be granted to the court by the Constitution or by valid legislation, as it "cannot be vested by agreement of the parties."
[Peper v. Princeton University Board of Trustees, 77 N.J. 55, 65-66, 389 A.2d 465 (1978) (citations omitted).]
The court scheduled a plenary hearing which was held on May 6, 1994, for the sole purpose of taking testimony regarding the jurisdictional issue, i.e. the nature of the relationship of the parties. The temporary restraining order was amended to continue its protections until the date of the hearing.

FACTS
The following facts are undisputed. Plaintiff and defendant met and began a romantic relationship in 1990. Sometime in January *618 of 1992 plaintiff realized that she was pregnant with defendant's child. She decided to terminate that pregnancy and in fact did so sometime in January of 1992. In the summer of 1992 plaintiff again became pregnant. This time she decided to bring the pregnancy to term, and the child was born on April 12, 1993. The parties have never been married and at no time have they resided together.
Plaintiff asserts that she and defendant continued sexual relations until approximately February of 1993, when she was seven months pregnant with the child she eventually gave birth to in April. In fact, plaintiff avers that defendant is the only man with whom she was having sexual relations throughout the summer of 1992, when the child was conceived. Plaintiff claims that defendant supported her decision to terminate her first pregnancy in January of 1992, to the extent that he accompanied her to the health clinic for the procedure. Plaintiff further testified that defendant has always held the child out to be his, by referring to her as his child and by making various small purchases of food, toys, and clothing in the way of support. In addition, plaintiff claims that she and defendant shared a common hotel room during a trip to Alabama in March of 1993.
Defendant testified that he had strenuous religious objections to plaintiff's decision to terminate her first pregnancy, and as a result ceased sexual relations with plaintiff in January of 1992. This would of course preclude the possibility of defendant being the father of plaintiff's child. Defendant further denies sharing a hotel room with plaintiff in Alabama, and any claims that he ever held plaintiff's child out to be his.

ISSUES OF LAW
Plaintiff argues that under any version of the above facts, she qualifies as a "victim of domestic violence" pursuant to N.J.S.A. 2C:25-19(d). That section provides that:
"Victim of domestic violence" means a person protected under this act and shall include any person who is 18 years of age or older or who is an emancipated minor *619 and who has been subjected to domestic violence by a spouse, former spouse, or any other person who is a present or former household member, or a person with whom the victim has a child in common.
Plaintiff prefaces her arguments by citing case law[1] to support the proposition that this section of the Act should be given a liberal construction by the courts, pursuant to the Legislature's express intent to protect "victims of violence that occurs in a family or family-like setting." N.J.S.A. 2C:25-18. Plaintiff's arguments can be segregated into three separate claims of jurisdiction. First, she contends that her prior pregnancy to which defendant admits paternity qualifies her under a liberal interpretation of the "has a child in common" clause. Second, plaintiff asks this court to find that she and defendant are "former household members," in the sense that they have conducted their relationship in a "family or family-like setting." Third, and in the alternative, the plaintiff petitions this court to further amend the temporary restraints; order the defendant to submit to blood or genetic paternity testing pursuant to N.J.S.A. 9:17-51(a); make a paternity determination based on the test results and the evidence adduced at the plenary hearing; and issue the final restraining order if and when that paternity determination names defendant as father of the child born in April of 1993.

I. DOES PLAINTIFF'S PRIOR TERMINATED PREGNANCY OF WHICH DEFENDANT ADMITS PATERNITY QUALIFY HER AS HAVING A CHILD IN COMMON WITH DEFENDANT?
An individual is protected under the Act if he or she "has been subjected to domestic violence by a ... person with whom the victim has a child in common." N.J.S.A. 2C:25-19d (emphasis added). The courts are instructed by the legislature in N.J.S.A. 1:1-1 that:
In the construction of the laws and statutes of this state, ... words and phrases shall be read and construed with their context, and shall, unless inconsistent with *620 the manifest intent of the legislature or unless another or different meaning is expressly indicated, be given their generally accepted meaning, according to the approved usage of the language. (Emphasis added.)
Furthermore, a "legislature is presumed to know the rules of grammar." State v. DeMarco, 174 N.J. Super. 411, 416 A.2d 949 (Law Div. 1980). Therefore, when the Legislature used the present tense of the verb "to have", one can glean that it meant to protect those persons who currently have a child in common with the perpetrator of the violence. This would be the usual and generally accepted meaning of "has", and there is nothing in the statute itself or in the legislative findings and declarations to indicate that another meaning was intended. Therefore, even if this court were prepared to find that plaintiff's prior pregnancy meant that she had a child in common with defendant in the past, such a finding would still not qualify her as a "victim of domestic violence" as defined in the Act.
Moreover, even if plaintiff were currently pregnant, this court would not be willing to hold, without clear evidence of such an intent, that by using the word "child" the legislature intended to include a pregnancy. First of all, fetuses are not treated as equivalent to a human being in any aspect of the law in New Jersey, unless such treatment is specifically directed by the Legislature. For example, criminal homicide is defined in N.J.S.A. 2C:11-2 to be the causing of the death of another "human being" with the requisite mental state. The courts have construed this definition to exclude fetuses,[2] and the Legislature has acquiesced in this construction.[3] Also, in defining "child" in the statute on *621 Administration of Estates, N.J.S.A. 3B:1-1, the Legislature failed to include the unborn. Rather, separate provision was made for "after born heirs" in N.J.S.A. 3B:5-8. These examples indicate that the Legislature does not mean fetuses when it refers to "children", and when it wants to include fetuses it does so specifically and unambiguously. At least one other court, construing a domestic violence statute with relevant language identical to that in our Act, found that a pregnancy in common was not a relationship covered by the statute. In Woodin v. Rasmussen, 455 N.W.2d 535 (Minn. Ct. App. 1990), the court was faced with a plaintiff suing under the Minnesota Domestic Abuse Act, Minn. Stat. § 518B.01 (1988), who had no other claim to jurisdiction but that she was currently pregnant by defendant. Like our Act, the relevant statutory language was "persons who have a child in common," and, also like our Act, there was no definition of "child" provided.
The Domestic Abuse Act does not contain a definition of the word "child" ... Although other statutes have been enacted that affect unborn children, these statutes specifically designate the inclusion.
[Woodin, 455 N.W.2d at 537.]
Based on this reasoning, the Minnesota Court of Appeals found that a pregnancy in common was not a relationship intended to be protected by their Legislature, and overturned the trial court's exercise of jurisdiction over these parties.
In addition, there is affirmative evidence to support the proposition that the Legislature did not intend to include pregnancies in common when it defined "victims of domestic violence". There is currently pending in the New Jersey Legislature a number of bills which would amend the current definition of "victim of domestic violence" to include "persons who are pregnant and allege abuse by the putative father of the fetus." 1994 New Jersey Assembly Bill No. 751, 206th Legislature, First Regular Session. The language of the statement of the sponsor of this bill clearly indicates his understanding of the current legislation as *622 excluding such a relationship: "The bill also expands the definition of "victim" to include persons who are pregnant and being abused by the putative father of the child." (emphasis added). The fact that this and two other bills[4] containing the same amendment are currently being considered by the Legislature is strong evidence that the common understanding in that body of the current provision is that "child in common" does not cover pregnancies in common. "An amendment to an act may be resorted to for discovery of legislative intent in the enactment amended." Matawan Borough v. Monmouth Cty. Tax Bd., 51 N.J. 291, 299, 240 A.2d 8 (1968). "In fact, it has been said that such action is evidence that the previous statute meant the `exact contrary'". State v. Foglia, 182 N.J. Super. 12, 16, 440 A.2d 16 (App.Div. 1981). The fact that the bills now pending in the Legislature have not yet been enacted does not significantly change the logic of this rule of statutory construction. In fact, it further highlights the need for this court to show restraint, and allow the legislative branch to make the policy decision as to what relationships will be the subjects of its domestic violence statutes.
The existence of these pending bills, in combination with the considerations already discussed, convinces this court that the Legislature did not intend that persons who only share a common pregnancy to be included in the definition of "victim of domestic violence". This means, a fortiori, and I so hold, that the Act does not cover persons who shared a pregnancy in the past which was never brought to term.

II. DOES THE INTIMATE NATURE OF THE PARTIES' RELATIONSHIP QUALIFY THEM AS "PRESENT OR FORMER HOUSEHOLD MEMBERS"?
In Desiato v. Abbott, 261 N.J. Super. 30, 617 A.2d 678 (Ch.Div. 1992), the trial court found jurisdiction to issue a final *623 restraining order pursuant to the Act under the following circumstances:
The parties spent time together as companions coupled with overnight stays at defendant's residence on several occasions. Plaintiff kept personal effects such as clothing, jewelry and grooming items at defendant's residence. They dined together and with defendant's parents.
[Id. at 34, 617 A.2d 678.]
The parties in Desiato had never been married and had no children in common. To support its decision, that court cited key language from the Legislative findings and declaration, N.J.S.A. 2C:25-18, such as "it is the responsibility of the courts to protect victims of violence that occurs in a family or family-like setting ..." and the Legislature "encourages the broad application of the remedies available under this act in the civil and criminal courts of this State." The court also pointed out that the current Act made substantive changes in the jurisdictional requirements of the former Prevention of Domestic Violence Act, N.J.S.A. 2C:25-3:
Analysis of the legislative history shows that the language of the former domestic violence statute . .. required a victim to have cohabited, meaning having resided together in the same living quarters, with the defendant. The new Act deleted this definition of victim and adopted the broader term "household member". Although the Act does not define "household member", a fortiori, it cannot mean to hold residency and cohabitation as a prerequisite.
[Desiato, 261 N.J. Super. at 33, 617 A.2d 678.]
On the basis of this reasoning, the court found that the parties conducted their relationship in a "family-like setting" and that they were "de facto household members". Id. at 34, 617 A.2d 678. The Appellate Division cited the Desiato opinion with approval in Bryant v. Burnett, 264 N.J. Super. 222, 624 A.2d 584 (App.Div. 1993).
Although this court has found frequent occasion to follow Desiato, that case, in my mind, marks the outer limit of legitimate judicial interpretation of the "household member" provision in the Act. This court can go no further without effectively amending the statute. There is no more fundamental canon of separation of powers, or tenet of statutory construction, than that the wisdom of a statute is not for the court to determine, and it is not the *624 function of the court to sit as a super-legislature or concern itself with the wisdom of policy underlying a statute. Union County v. Benesch, 98 N.J. Super. 167, 175, 236 A.2d 409 (App.Div. 1967). It is my function to interpret and to apply  not to amend.
In light of these principles, whatever the precise meaning of such terms as "household member" and "family or family-like setting", they must bear some relationship to the widely recognized and normal meaning of those words. As I have already noted, the Legislature has admonished the courts that "words and phrases shall ... be given their generally accepted meaning, according to the approved usage of the language." N.J.S.A. 1:1-1. Black's Law Dictionary 666 (5th ed. 1979) defines "household" as "a family living together. Those who dwell under the same roof and compose a family." The broadest definition of "family" to be found in that dictionary is "a collective body of persons who live together in one house and under one head or management." Id. at 543. On occasion our courts have been asked to give substance to such terms in other areas of the law. Construing the service of process rule, R. 4:4-4, the Appellate Division held that the term "member of the household" includes all those "... who make their home with the person to be served." Resolution Trust v. Associated Gulf, 263 N.J. Super. 332, 343, 622 A.2d 1324 (App.Div. 1993) (emphasis added). Setting out the constitutional restrictions on a legislative body's power to define a "family" in the context of zoning restrictions, the New Jersey Supreme Court equated the term "single-family" with a "single housekeeping unit". Berger v. State, 71 N.J. 206, 225-27, 364 A.2d 993 (1976). A "single housekeeping unit" has been found to exist where
(t)he house had one large kitchen, which was shared by all ten students. The students often ate meals together in small groups, cooked for each other, and generally shared the household chores, grocery shopping, and yard work. A common checking account paid for food and other bills. They shared use of the telephone.
[Borough of Glassboro v. Vallarosi, 117 N.J. 421, 424, 568 A.2d 888 (1990).]
No matter how liberally this court is authorized to construe the provisions of the Act, any legitimate construction must bear some *625 relation to the commonly accepted definitions of those terms, examples of which I have set out above. For that reason, I decline plaintiff's invitation to further expand the definition of "household members" to include two people who never, in any sense of the word, shared a household. Even giving due consideration to the reference in the Legislative Findings and Declaration to protecting "victims of violence that occurs in a family or family-like setting," N.J.S.A. 2C:25-18, I conclude, from my analysis of the possible meanings of "family", that even a term such as "family-like" requires some indicia of sharing a home together when it is used to describe the term "household members."
This finding does not conflict with the holding in Desiato. Such indicia were present in that case, in that the plaintiff often spent nights and weekends with defendant at his home; frequently shared meals there with defendant, and kept personal property and grooming items there. In the case now before the court, the parties, no matter how intimate and longstanding their relationship, have never in any way shared a household. Plaintiff does not claim that she and defendant spent nights or weekends together in one or the other of their separate residences. Likewise, she makes no assertion that either of the parties kept personal items at the other's home, nor even that they shared meals together at either of the two households.
There is further evidence that the Legislature did not intend to include intimate relationships, in and of themselves, when they gave substance to the term "victim of domestic violence." Currently pending in the Legislature is 1994 New Jersey Assembly Bill No. 757, 206th Legislature, First Regular Session. This bill would, among other things, amend N.J.S.A. 2C:25-19d to read:
"Victim of domestic violence" means a person who has been subjected to domestic violence by ... a person with whom the victim had an intimate relationship. (Emphasis added.)
The sponsor's statement attached to this bill is also probative:
This bill would broaden the provisions of the "Prevention of Domestic Violence Act of 1991" to protect a person who suffers domestic violence at the hands of someone the victim once dated. Currently, the Domestic Violence Act only covers people *626 who have been subjected to domestic violence by a spouse, former spouse, a present or former household member, or a person with whom the victim has a child in common. The sponsor believes that the omission from this list of persons who were once involved in dating relationships or other intimate relationships is an oversight that must be rectified. (Emphasis added.)
Clearly this is not an amendment which is being proposed in order to clarify an existing ambiguity or elucidate what is already the law. It is obvious that proponents of this bill read the current Act as omitting from its protections a plaintiff whose only claim to jurisdiction would be an intimate relationship with the defendant.
For the reasons heretofore expressed, I find the existence of this bill to be persuasive evidence that the current legislation does not already encompass the suggested modifications. In light of this, and the other considerations discussed above, I am convinced that the meaning of the term "household member" is not susceptible to any further judicial extension beyond that given to it by the court in Desiato. I therefore hold that a victim of violence at the hands of someone with whom that victim has shared only an intimate relationship which does not, at the very least, include some indicia of household membership like those present in Desiato, is not a "victim of domestic violence" under the Prevention of Domestic Violence Act of 1991.

III. DOES THIS COURT HAVE JURISDICTION TO ISSUE AN AMENDED TEMPORARY RESTRAINING ORDER PENDING A FINAL DETERMINATION AS TO PATERNITY OF PLAINTIFF'S CHILD?
Plaintiff has one remaining claim that she is a "victim of domestic violence" under the Act: that she and defendant have a "child in common" in the daughter that was born to Plaintiff on April 12, 1993. Defendant denies paternity of this child. Of course, this court cannot simply accept defendant's naked denial as true and on that basis find that there is no jurisdiction to act on the domestic violence complaint. Such a rule would give many a defendant a convenient method of avoiding the jurisdiction of the court when brought before it on a domestic violence complaint. *627 At the same time, however, there is no reason for this court to make a difficult factual determination of paternity, which carries with it such important lifelong consequences, without using the most accurate methods available, i.e., blood or genetic tests. Moreover, the Legislature has set out the procedures by which determinations of a parent-child relationship are to be made in the New Jersey Parentage Act, N.J.S.A. 9:17-38 to -59, and the use of blood or genetic tests are specifically provided for therein. N.J.S.A. 9:17-51a. Therefore, pursuant to that section, this court will order the appropriate genetic or blood testing.[5] No final determination of paternity will be made until the results of said testing are available to be taken into evidence, pursuant to N.J.S.A. 9:17-52c.
As a matter of practical logistics, the results of the paternity test will not be available to the court for several weeks. Plaintiff asks that she be given interim relief in the form of an amended temporary restraining order, the protections of which would extend until the final paternity determination. This petition raises the question whether, since the jurisdiction of this court to issue a final order is yet to be determined, I have any authority to issue amended temporary restraints.
Plaintiff argues that the temporary relief she requests is in the nature of a preliminary injunction, which this court may issue under the standards delineated in the seminal case of Crowe v. DeGioia, 90 N.J. 126, 447 A.2d 173 (1982). In that case the trial court, faced with a plaintiff who was suing to enforce a support agreement between unmarried cohabitants, awarded plaintiff interim *628 support pending the final determination of the merits of her claim. The Supreme Court affirmed the trial court's decision, setting out the standards which must be met before granting preliminary injunctive relief:
One principle is that a preliminary injunction should not issue except when necessary to prevent irreparable harm. Harm is generally considered irreparable in equity if it cannot be redressed adequately by monetary damages.... A second principle is that temporary relief should be withheld when the legal right underlying plaintiff's claim is unsettled.... A third rule is that a preliminary injunction should not issue where all material facts are controverted. Thus, to prevail on an application for temporary relief, a plaintiff must make a preliminary showing of a reasonable probability of ultimate success on the merits.... The final test in considering the granting of a preliminary injunction is the relative hardship to the parties in granting or denying the relief.
[Id. at 132-134, 447 A.2d 173 (citations omitted).]
There is no doubt in my mind that plaintiff's situation meets these criteria. Her testimony as to the factual basis for the restraints was credible, and defendant does not deny the acts of harassment and criminal mischief which formed that factual basis. Given the potential for further violence inherent in this scenario, I find that it is necessary to issue the temporary relief to prevent irreparable injury to plaintiff in the form of further acts of domestic violence. Secondly, the legal right which underlies plaintiff's claim is well settled, in that, if the pending jurisdictional issue is resolved in her favor, plaintiff will be entitled to a restraining order pursuant to the Act. Third, plaintiff has made a sufficient showing of a reasonable probability of success on the merits, in that her testimony as to paternity was specific in its detail and credible in its presentation. Furthermore, the other issues in the grant of restraints are already resolved, in that defendant did not dispute plaintiff's testimony. Finally, in weighing the relative hardships to the parties, I find that plaintiff would be more prejudiced by a failure to issue the restraints then defendant would be by the entry thereof. In so deciding, I first note that defendant was willing to consent to the entry of the restraints before the paternity issue was raised. It would be ironic, then, for me to now to decide that he is greatly burdened by their continuance. Furthermore, as defendant was not residing *629 with plaintiff before the temporary restraints were issued, their existence is not displacing him from his home. In fact, under these particular facts, the only significant burden being imposed on defendant is the threat of criminal sanction if he does not leave plaintiff alone. Though this court recognizes the liberty interests affected by any such order, I am also cognizant of the acts of domestic violence testified to by plaintiff and not denied by defendant. In light of these considerations, I find that denying the injunctive relief requested would prejudice plaintiff far more than granting it will burden defendant.
Based on all these factors, I will issue an amended temporary restraining order, continuing all of the protections given plaintiff on April 7, 1994, until such time as this court makes a final paternity determination, and either issues a final restraining order or dismisses all restraints for lack of jurisdiction.

IV. DOES DEFENDANT HAVE A RIGHT TO TRIAL BY JURY ON THE ISSUE OF PATERNITY?
Defendant argues that, under N.J.S.A. 9:17-49b, he is entitled to a jury trial on the issue of paternity. That provision reads:
The trial shall be by the court without a jury, unless a party to the action shall file with the court a written request for a trial by jury within 10 days after service of the complaint.
Defendant put his request for a jury trial on the record during the hearing of May 6, 1994, which was precisely 10 days after he was first put on notice, at the April 22, 1994 return date, that the paternity of the child would have to be determined as part and parcel of the domestic violence proceedings. Given the rather unorthodox manner by which this issue came to the fore, I find that defendant's request for a jury trial in this manner would be sufficient to satisfy the requirement of a "written request for a trial by jury within 10 days after service of the complaint."
*630 However, for other reasons, I find that this court is authorized to make the paternity determination without a jury. N.J. Const. art. VI, § 3, ¶ 4 provides that:
Subject to rules of the Supreme Court, the Law Division and the Chancery Division shall each exercise their powers and functions of the other division when the ends of justice so require, and legal and equitable relief shall be granted in any cause so that all matters in controversy between the parties may be completely determined.
Interpreting this constitutional provision, the New Jersey Supreme Court noted:
It is the settled rule that where equity has rightfully assumed jurisdiction over a cause for any purpose, it may retain the cause for all purposes, and proceed to a final determination of the entire controversy ... The constitutional right of trial by jury is, of course, subject to this inherent equitable jurisdiction.... It suffices if the matters to be adjudicated be germane to or grow out of the subject matter of the equitable jurisdiction.
[Fleischer v. James Drug Stores, 1 N.J. 138, 150, 62 A.2d 383 (1948).]
Plaintiff offers support for the notion that this principle is still viable today. In Apollo v. Kim Anh Pham, 192 N.J. Super. 427, 470 A.2d 934 (Ch.Div. 1983), aff'd. 224 N.J. Super. 89, 539 A.2d 1222 (App.Div. 1987), the Chancery Division decided issues which would otherwise be triable to a jury, noting that "... the constitutional right of trial by jury is subject to the inherent jurisdiction of equity, which has general jurisdiction to adjudicate ancillary and incidental matters." Id. at 431, 470 A.2d 934 (citations omitted).
The finding of paternity in the case at bar is an ancillary issue to the primary injunctive relief sought by plaintiff in the form of a domestic violence restraining order. Thus, I find that I have ancillary jurisdiction to determine paternity, and that defendant's right to a trial by jury on this issue must yield to this court's inherent equitable jurisdiction to make a final adjudication of the entire controversy.

SUMMARY
In summary, I hold the following:
1) A prior terminated pregnancy in common is not a relationship which the Legislature intended to encompass when it defined a "victim of domestic violence" as *631 including "a person who ... has been subjected to domestic violence by ... a person with whom the victim has a child in common" in N.J.S.A. 2C:25-19d.
2) In order to qualify as a "present or former household member" under the definition of "victim of domestic violence," N.J.S.A. 2C:25-19d, it is not enough that the plaintiff is or was involved in an intimate relationship with the defendant. Rather, the relationship must at least evidence some indicia of actual sharing of a household, as outlined in Desiato v. Abbott, 261 N.J. Super. 30, 34, 617 A.2d 678 (Ch.Div. 1992).
3) Where a fact which will determine the jurisdiction of the court over a domestic violence matter is in dispute, such as the paternity of a child, the court should conduct a limited evidentiary hearing, and weigh the facts of the case pursuant to the standards for awarding of preliminary injunctive relief outlined in Crowe v. DeGioia, 90 N.J. 126, 132-134, 447 A.2d 173 (1982). If the standards are met, the court should issue an amended temporary restraining order until the disputed jurisdictional fact is determined.
4) The right to trial by jury granted to a defendant in a paternity action in N.J.S.A. 9:17-49b must yield to the ancillary jurisdiction which this court of equity has over all issues which are incidental to the primary equitable relief sought. When the question of paternity must be resolved in order for the court to exercise subject matter jurisdiction over a domestic violence complaint, the court should take testimony to determine whether there is "some reasonable quantum of individualized suspicion," S.S. v. E.S., 243 N.J. Super. 1, 12, 578 A.2d 381 (App.Div. 1990), that the party in question is the father. If that threshold finding is made, the court should order genetic testing pursuant to N.J.S.A. 9:17-51a. Once the test results are in evidence, the paternity determination may be made without a jury.
Defendant is ordered to submit to genetic testing to determine whether he is the father of the child born to plaintiff on April 12, 1993. Pending a final paternity determination by this court, defendant is temporarily restrained from having any contact with plaintiff. If he is found to be the father of the child, a final domestic violence restraining order will be entered against him, permanently restraining him from having any contact with plaintiff.
NOTES
[1] See discussion, infra, Section II, of Desiato v. Abbott, 261 N.J. Super. 30, 617 A.2d 678 (Ch.Div. 1992).
[2] See In re Vince, 2 N.J. 443, 67 A.2d 141 (1949); State in the Interest of A.W.S., 182 N.J. Super. 334, 440 A.2d 1174 (J. & D.R.Ct. 1980), aff'd. 182 N.J. Super. 278, 440 A.2d 1144 (App.Div. 1981).
[3] It is an accepted principle of statutory construction that a legislature's failure to amend a provision after a given judicial interpretation is evidence that said interpretation is in accord with legislative intent. Egan v. Erie R. Co., 29 N.J. 243, 148 A.2d 830 (1959); Closter Service Stations, Inc. v. Board of Com'rs. of Village of Ridgefield Park, 99 N.J. Super. 69, 238 A.2d 504 (App.Div. 1968); Jersey City Incinerator Auth. v. Department of Pub. Utilities of N.J., 146 N.J. Super. 243, 369 A.2d 923 (App.Div. 1976).
[4] See also 1994 New Jersey Assembly Bill No. 289, 206th Legislature, First Regular Session; 1994 New Jersey Senate Bill No. 347, 206th Legislature, First Regular Session.
[5] Although the issue was not raised by defendant, I note that this court is aware of the privacy interests which are implicated by an order as intrusive in nature as this. However, the Fourth Amendment is satisfied in the context of court ordered blood or genetic tests to determine paternity when there is "some reasonable quantum of individualized suspicion to support court ordered blood testing." S.S. v. E.S., 243 N.J. Super. 1, 12, 578 A.2d 381 (App.Div. 1990) (emphasis added). I find that, based on the credible and specific testimony of plaintiff taken on May 6, 1994, the court has before it more than sufficient evidence to support the order for blood or genetic tests.